The Globe Milling Co. and others vs. Boynton.

The Globe Milling Company and others, Respondents, and Anderson, Appellant, vs. Boynton, imp., Garnishee, Appellant.

*April 13 — May 1, 1894.*

87  619
93  671
87  619
96  178
87  619
101  288
87  619
109  659
87  619
110  1605

(1, 2) *Garnishment: Failure of due service on principal defendant: Allowance of damages for breach of contract:* (3) *Appeal: Sufficiency of exceptions: Interest.*

87  619
59 L.R.A 390n

1. Under sec. 2756, R. S., unless a garnishee summons be served within ten days after service thereof on the garnishee, or the proof of service on the latter shows that service on the principal defendant cannot be made within the state, the service on the garnishee becomes "void and of no effect from the beginning;" and in such case the garnishee action may be dismissed at the instance of a creditor having a lien on the property by subsequent garnishment. [The effect of a voluntary appearance of the principal defendant in the garnishee proceeding, where the rights of no other creditors are involved, not determined.]

2. A garnishee from whom moneys were due to the principal defendant on a contract which the latter had abandoned before its completion was allowed as damages all expenses incurred by him in completing the contract, these being the damages agreed upon between the plaintiffs and the garnishee and the only damages claimed in the garnishee's answer. On the trial further damages were claimed by the garnishee for losses caused by the abandonment of the contract by the principal defendant, but the evidence thereof was indefinite and uncertain. *Held,* that such additional damages were properly denied.

3. A general exception to an entire finding that a sum is due with interest is insufficient to raise the question whether the allowance of interest was proper.

APPEALS from the Circuit Court for *Wood* County.

These are several garnishee actions, consolidated and tried together.

In 1891 the defendant M. R. Hansen was engaged in the business of manufacturing lumber at his mills in Hansen, in said Wood county. March 9, 1891, said defendant entered into a contract in writing with the garnishee *E. G.*

*Boynton,* by which he sold to said *Boynton* a certain amount of pine lumber at the prices therein specified. As there is no dispute as to the amount due Hansen under this contract, no further statement of its terms is necessary.

On September 11, 1891, said defendant made another contract in writing with said *Boynton.* By the terms of this second contract the defendant sold and conveyed to the said *E. G. Boynton* all the pine lumber which had been or should be sawed at Hansen on or before December 1, 1891, at the prices therein specified. Hansen agreed to grade and load said lumber as ordered by *Boynton,* without any additional cost to *Boynton,* except for certain specified mill work in planing and resawing the same as in said contract provided. Hansen further agreed to do all planing-mill work required that could be done at his planing mill at said Hansen, and for which *Boynton* agreed to pay him a certain price per thousand, as specified in said contract, and that such planing-mill work was to be paid for by *Boynton* at the end of each sixty days. The lumber so sold was to be paid for as follows: $8,500 on or before the 1st day of October, 1891, according to the conditions of certain promissory notes given by said *Boynton;* the balance of fifty per cent. of the entire purchase price on or before January 1, 1892, the amount of such price to be determined by an invoice of all lumber in pile at the end of the sawing season of 1891; the remaining fifty per cent. of said purchase price to be paid on or before March 1, 1892, the said payments to be based on the invoice made as before mentioned, the estimate then made showing 1,600,000 feet of lumber in pile, with about 400,000 feet of logs in the river to be sawed. The final settlement was to be made on the actual scale of lumber as shipped, at the purchase price therein mentioned. It was further mutually agreed between said parties that when the lumber was es-

timated each and every pile should be marked as sold to *E. G. Boynton*, with date of sale.

After the execution of this contract, Hansen proceeded to saw said logs, and plane and ship lumber from time to time, under the order of *Boynton*, till about the 9th day of October, 1891, when he absconded from the state of Wisconsin, leaving his wife and family at his place of residence at Hansen, where they continued to reside for some months thereafter. Hansen himself has never returned to this state.

On the 22d of September, 1891, and after the execution of said contract of September 11th, said *Boynton* entered into partnership with the garnishee W. W. Taylor, and in the articles of copartnership it was provided, among other things, that Taylor should have an undivided one-half interest in each of said contracts with Hansen, together with an undivided one-half interest in the lumber therein mentioned.

At the time Hansen absconded, the first contract with *Boynton* had been substantially completed, and the sawing of the logs mentioned in the second contract had been substantially finished, but the bulk of the lumber covered by the second contract still remained in his mill yards at Hansen. It turned out that Hansen was largely indebted at the time he absconded, and immediately thereafter numerous actions were commenced against him; and his property, including the lumber covered by said contracts in his mill yards, was attached, and garnishee proceedings were instituted, some against *E. G. Boynton* alone, and some against *Boynton* and Taylor jointly and severally, and some against *Boynton* and Taylor jointly only. Some of the actions were brought in the circuit court of La Crosse county, and some in the circuit court of Wood county, as will hereinafter more fully appear. It was also found that Hansen owed a large amount to his workmen for labor

performed on said lumber and the logs from which it was manufactured, and liens therefor were filed in Wood county. It was also found that the defendant George B. McMillan had a claim against Hansen for some of the timber out of which the lumber sold by Hansen to *Boynton* was manufactured, and also that Lawrence Ward had a similar claim. All the labor liens and the claim of Ward were adjusted and paid out of the funds due Hansen under said contracts, with the consent and approval of all parties interested, and it was stipulated that the claim of said George D. McMillan, who interpleaded in said garnishee actions, in case anything should be found due him, should be first taken out of the moneys ordered to be paid into court under the garnishee proceedings, so it will not be necessary to notice those claims any further. The only parties interested in this appeal are the plaintiffs and respondents, the *Globe Milling Company*, *Nels Johnson*, and *Ed. T. Harmon*, and the plaintiff and appellant, *Mons Anderson*, and the garnishee and appellant *E. G. Boynton*.

In the case of *Globe Milling Company*, plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* and W. W. Taylor, garnishees, the affidavit and garnishee summons were served on the garnishee *E. G. Boynton* on the 16th of October, and on the defendant M. R. Hansen on the 17th of October, and on the garnishee W. W. Taylor on the 19th of October, 1891; and said affidavit charged a joint and several liability against said garnishees. In the case of *Nels Johnson*, plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* alone as garnishee, the affidavit and garnishee summons were served on *E. G. Boynton* on the 16th day of October, 1891, at 9:30 in the forenoon, and on the defendant M. R. Hansen on the 24th day of October, 1891. In the case of *Ed. T. Harmon*, plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* alone as garnishee, the affidavit and garnishee summons were served on said *E. G.*

*Boynton* and on the defendant M. R. Hansen on the same dates that they were served in the case of *Nels Johnson,* previously mentioned. In the case of *Nels Johnson,* plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* and W. W. Taylor, garnishees, the affidavit and garnishee summons were served on said *E. G. Boynton* on the 17th day of October, 1891, at 8:05 A. M., and on the defendant M. R. Hansen on the 24th day of October, 1891. In the case of *Ed. T. Harmon,* plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* and W. W. Taylor jointly as garnishees, the affidavit and garnishee summons were served on said *Boynton* and on said defendant at the same time they were served in the case of *Nels Johnson,* as previously stated. The principal actions in the foregoing cases as well as said garnishee actions were commenced in the circuit court for Wood county.

In the case of *Mons Anderson,* plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* and W. W. Taylor jointly as garnishees, the affidavit and garnishee summons were served on said garnishees on the 15th day of October, 1891, but were not served on said defendant Hansen until October 29, 1891, being more than ten days after the service of the same on said garnishees. In the second case of *Mons Anderson,* plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* and W. W. Taylor jointly as garnishees, the affidavit and garnishee summons were served on said garnishees October 15, 1891, but were not served on said defendant Hansen until October 29, 1891, being more than ten days after the service of the same on said garnishees. In the third action of *Mons Anderson,* plaintiff, vs. M. R. Hansen, defendant, and *E. G. Boynton* and W. W. Taylor jointly as garnishees, the affidavit and garnishee summons were served on said garnishees October 17, 1891, but were not served on said defendant Hansen until October 29, 1891, being more than ten days after the service of the same on

said garnishees. The principal actions in which *Mons Anderson* is plaintiff, as well as said garnishee actions instituted by him, were commenced in the circuit court of La Crosse county, but, after judgments had been rendered in said principal actions in La Crosse county, the venue of said garnishee actions was changed by stipulation to the circuit court of Wood county.

In said garnishee actions of *Nels Johnson* and *Ed. T. Harmon* against said *Boynton* alone as garnishee, the garnishee filed the statutory affidavit denying all liability, and said plaintiffs duly joined issue thereon. In all of said other garnishee actions, those begun in Wood as well as in La Crosse county, wherein said *Boynton* and Taylor were joined as garnishees, the said garnishees filed their answers, in which they set up the two contracts heretofore mentioned, being Exhibits H and I, and, after setting forth the terms and conditions of said contracts, they further alleged that on the 22d of September, 1891, the said *E. G. Boynton* and W. W. Taylor entered into copartnership together in the lumber business, and in their articles of copartnership, among other things, the said *E. G. Boynton* sold and transferred to said Taylor an undivided one-half interest in said contracts and in the lumber therein mentioned; that the defendant Hansen had failed and neglected to perform said contracts on his part, and that before the commencement of said actions, and on or about October 9, 1891, he absconded from this state, leaving said contracts unperformed on his part; that before said Hansen absconded there had been paid him on said first contract all sums due thereon, except not to exceed $300, but the exact amount of which they were unable to state, and that there had been paid on said last contract $10,655; that since said defendant had absconded and abandoned said contracts they had been obliged to pay out and expend, and would be obliged to pay out and expend, large sums of money to carry out the

work which said Hansen had agreed to perform, and that it was impossible for them to state at that time how much would be due and payable to said defendant upon the completion of said contracts, if anything, and that it would be impossible for them to ascertain how much, if anything, would be due and payable to said defendant on said contracts until they had completed the work which it was necessary to do to carry out said contracts, which work they were then doing as rapidly as possible, but that the damage to them on account of the noncompletion of said first contract by said Hansen would be at least $500, which amount, or any amount which they might be required to pay out to complete said contract on the part of said defendant, they asked to have offset in their favor against any sum that might be payable by them under the provisions of said second contract. Said garnishees then set forth in their answer each of said garnishee actions which had been commenced against them and hereinbefore referred to, and prayed for a stay of proceedings in said garnishee actions until the aforesaid contract could be completed. The plaintiffs in each of the said garnishee actions duly joined issue on said answers.

After the venue of the several garnishee actions commenced in La Crosse county had been changed to Wood county, continuances were granted therein from time to time until said garnishees had completed all the work and shipped all the lumber covered by said contract. The several garnishee actions hereinbefore mentioned · were by agreement tried together before the court without a jury.

There is no dispute as to the facts in the case. The testimony of said *E. G. Boynton* shows that soon after said Hansen absconded, and after said lumber had been attached, about October 17, 1891, *Boynton* came to Grand Rapids, and had a conference with the creditors of said Hansen, and their attorneys, who had attached said lum-·

ber; that it was then agreed that said creditors should release their attachments thereon, and that he, the said *Boynton*, should go on and fix up the planing mill for the purpose of planing the lumber, and ship it as fast as he could, and should send a copy of each invoice of lumber so shipped, each day, to the First National Bank of Grand Rapids, and, when he got through, whatever balance there was should be paid over in said garnishee actions. He further testifies that he went on, in compliance with said agreement, repaired the planing mill, employed men to plane the lumber and to ship the same, and so continued to plane and ship said lumber until the whole stock covered by said contract was disposed of; and that he kept an account of all his expenses incurred in repairing said planing mill and performing said work, and rendered a statement thereof to the court, in connection with his testimony. *Boynton* also testified that he spent forty and one-half days' time in personally supervising the work performed in planing, grading, and shipping said lumber, and that his services in that behalf were worth $10 per day, amounting to $405, and that he actually paid out for car fare and hotel bills, during said time, $162.94, amounting in all to $567.94. He also testified that at the time Hansen abandoned said contract and absconded from the state the firm of Boynton & Taylor had various contracts for the sale of lumber to be planed, graded, and loaded by said Hansen, and that said contracts had to be canceled by reason of said Hansen failing to carry out said agreement on his part; and that Boynton & Taylor were further damaged by reason of delays in the shipment of lumber occasioned by Hansen abandoning said contracts on his part, and by loss of profits upon sales thereon, and that all of such damages amount to the sum of $1,500.

The court found that the affidavit and garnishee summons in said several garnishee actions were served at the

times hereinbefore stated; that at the time of the trial of said garnishee cases there was due on the judgment wherein the *Globe Milling Company* was plaintiff and said M. R. Hansen defendant the sum of $1,056.45, besides interest; and on the judgment wherein *Nels Johnson* was plaintiff and said M. R. Hansen defendant.there was a balance of $1,637.11, besides interest; and on the judgment wherein *Ed. T. Harmon* was plaintiff and said M. R. Hansen defendant there was a balance due of $2,274.06, besides interest; and on the three judgments wherein *Mons Anderson* was plaintiff and M. R. Hansen defendant there was due the sum of $7,946.03; and that there was due to the defendant George B. McMillan, who interpleaded as aforesaid, on account of timber claimed by him, the sum of $130 damages and $50 costs, which, pursuant to the stipulation of the parties herein, is to be paid in full out of the funds in the hands of *E. G. Boynton*, garnishee. The court allowed in full the claim for forty and one-half days' time spent by *Boynton* as aforesaid, and for car fare and hotel expenses, amounting in all to $567.94, and also for all expenses incurred in repairing the planing mill, and planing, grading, and loading all of said lumber, but disallowed the claim of $1,500 for damages on account of said Hansen's failure to perform the second contract; and found that there was due on said contract, Exhibit H, the sum of $475.38, and on said contract, Exhibit I, the sum of $2,838, which, with interest at six per cent. per annum from January 1, 1893, amounted in all, at the date of findings, to the sum of $3,446.02, and that said sum was due and owing under said contracts to said defendant M. R. Hansen from the said *E. G. Boynton* alone.

And the court found as conclusions of law that in said several garnishee actions wherein *Mons Anderson* and the Mons Anderson Company, respectively, are plaintiffs, and said M. R. Hansen defendant, and the said *E. G. Boynton* and

W. W. Taylor jointly are garnishees, the service on said garnishees became and is void and of no effect from the beginning, for the reason that in none of said garnishee actions was the garnishee summons therein served on the defendant M. R. Hansen within ten days after the service of the same on said garnishees, and that each and all of said garnishee actions should be dismissed. The court also found that *E. G. Boynton* and W. W. Taylor were not jointly indebted to said defendant M. R. Hansen in any sum whatever, and were not jointly liable as garnishees, and that in all of said garnishee actions wherein they are alleged to be jointly liable only, and not jointly and severally liable, they are entitled to have such actions dismissed; and that said *E. G. Boynton* was severally and alone liable as garnishee to the *Globe Milling Company*, *Nels Johnson*, and *E. T. Harmon*, the respective plaintiffs in said garnishee actions, and to the said George B. McMillan, in said sum of $3,446.02, including interest as aforesaid; and that said plaintiffs and said McMillan were entitled to have said indebtedness paid over and applied on their said judgments; and, said three plaintiffs having stipulated to that effect, it was accordingly ordered that the claim of said McMillan should be first paid out of said amount so found due, and that the balance thereof should be divided equally between said three judgment creditors and applied on their judgments.

The garnishees *E. G. Boynton* and Boynton & Taylor excepted to that part of said findings which disallowed their said claim for $1,500 damages; also to that part of said findings which found that said *Boynton* alone is liable as garnishee upon said indebtedness to the defendant M. R. Hansen. And the plaintiffs *Mons Anderson* and the Mons Anderson Company excepted to that part of said findings which finds that the only amount now due from the said *E. G. Boynton* to the said M. R. Hansen, including inter-

The Globe Milling Co. and others vs. Boynton.

est, is the sum of $3,446.02; also to that part of said find-ings wherein the court finds that the several garnishee actions wherein *Mons Anderson* and Mons Anderson Com-pany, respectively, are plaintiffs, and M. R. Hansen defend-ant, and *E. G. Boynton* and W. W. Taylor are garnishees, the service on said garnishees became void and of no effect from the beginning; and to that part of said findings which finds that said *Boynton* and Taylor are not jointly indebted to M. R. Hansen in any sum whatever.

The garnishee *E. G. Boynton* has appealed from that part of said judgment which adjudges him liable as gar-nishee in said actions in the sum of $3,446.02, and requir-ing him to pay the same to the clerk of the circuit court of said Wood county within ten days after service on him of a certified copy of said judgment. The plaintiff *Mons Anderson* appeals from that part of said judgment which adjudges that the balance of the amount due from the garnishee *E. G. Boynton*, to wit, $3,446.02, after deducting $180 directed to be paid to George B. McMillan, be paid in equal shares to the plaintiffs the *Globe Milling Company, Nels Johnson*, and *Ed. T. Harmon*, and that said plaintiff *Mons Anderson* do not recover any part of said sum so found due from said *Boynton;* and from that part of said judgment which adjudges that said three garnishee actions in which *Mons Anderson* is plaintiff and *E. G. Boynton* and W. W. Taylor are garnishees be dismissed.

*George H. Gordon* for the appellant *Anderson*, contended, *inter alia*, that the other plaintiffs, not being parties to the suits wherein *Anderson* is plaintiff, are in no position to raise questions of irregularity in the service of process which causes no substantial injustice to either of them. Drake, Attachm. sec. 273; *Fridenberg v. Pierson*, 18 Cal. 152; *Isham v. Ketchum*, 46 Barb. 43; *In re Griswold*, 13 id. 412; *Ward v. Howard*, 12 Ohio St. 158. The defend-

ant Hansen alone had a right to insist upon a strict compliance with sec. 2756, R. S., because it was simply a notice to him that the court had acquired jurisdiction of his property. Drake, Attachm. (5th ed.), sec. 697; *Winner v. Hoyt*, 68 Wis. 278; *Thomas v. Richards*, 69 id. 678.

For the garnishees there was a brief by *Bleekman & Bloomingdale*, and oral argument by *F. H. Bloomingdale*. To the point that the garnishees should be entitled to damages for losses suffered in their business by reason of Hansen's abandoning his contract, they cited 1 Suth. Dam. 79; *Harrow Spring Co. v. Whipple Harrow Co.* 90 Mich. 147; *Mann v. Taylor*, 78 Iowa, 355; *Leonard v. Beaudry*, 68 Mich. 312; *Treat v. Hiles*, 81 Wis. 280; *Corbett v. Anderson*, 85 id. 218; *Ramsey v. Holmes E. P. Co.* id. 174; *Wolcott, Johnson & Co. v. Mount*, 36 N. J. Law, 262; *Booth v. Spuyten Duyvil R. M. Co.* 60 N. Y. 487; *Grosvenor v. Ellis*, 44 Mich. 452; *Edwards v. Sanborn*, 6 id. 348.

For the respondents there was a brief by *Geo. L. Williams*, attorney for *The Globe Milling Co.*, and *Gardner & Gaynor*, attorneys for *Johnson* and *Harmon*, and oral argument by *Mr. Williams* and *Geo. R. Gardner*. In reply to the brief of the appellant *Anderson*, they cited *McDonald v. Vinette*, 58 Wis. 619; *McCormick H. M. Co. v. James*, 84 id. 600; *Suydam v. Huggeford*, 23 Pick. 465; Drake, Attachm. sec. 273 *et seq.; Stone v. Miller*, 62 Barb. 430; *Hawes v. Clement*, 64 Wis. 152; *Healey v. Butler*, 66 id. 12; *Williams v. Williams*, 61 Iowa, 612; *Axtell v. Gibbs*, 52 Mich. 639; *Hamilton v. Rogers*, 67 id. 135.

WINSLOW, J. Although the statement of facts is long, the questions necessary to be decided are but two in number: *First.* Were the garnishee actions in favor of *Anderson* properly dismissed because the summonses were not served on the main defendant within ten days after their

The Globe Milling Co. and others vs. Boynton.

service on the garnishees? *Second.* Was the garnishees' claim for $1,500 damages on account of Hansen's failure to carry out his contract properly disallowed?

1. The summons in each of the *Anderson* actions was served on the garnishee on the day before the service in any other case. These claims thus had priority, unless such priority has been lost. The statute provides (R. S. sec. 2756) that in case of garnishment the garnishee summons shall not only be served upon the garnishee, but upon the defendant in the main action, and that "unless the garnishee summons be so served on the defendant, . . . or the proof of service on the garnishee shows that after due diligence such service cannot be made within the state, the service on the garnishee shall become void and of no effect from the beginning." This is strong and radical language. There is little, if any, room for construction. We know of no feasible way of softening down the meaning of the words "void and of no effect from the beginning" so that they shall mean "voidable at the election of the defendant." Yet this is practically what counsel for appellant *Anderson* insists we ought to do. It is argued that only the defendant or the garnishees can make the objection, and, neither of them having made any objection, it is waived. It is further said that garnishment is a proceeding *in rem*, and that jurisdiction of the *res* is acquired by service upon the garnishee, and that the service upon the main defendant is simply a notice not essential either to the acquiring or maintaining of jurisdiction over the *res*.

In support of this contention much reliance is placed upon *Winner v. Hoyt*, 68 Wis. 278, and not without some show of reason. However, the question here presented was not in that case. In that case garnishment proceedings were brought in aid of execution upon a judgment against a firm, and it was claimed that the firm property

had been fraudulently conveyed to the garnishee. Service was made upon one of the firm within the ten days prescribed, and the other could not be found. It was decided in that case (and manifestly rightly decided) that so far as firm property was sought to be reached the service upon one partner was sufficient to satisfy the requirement of the statute. This was the question presented by the facts of that case, and, consequently, the question which was decided. It was said in that case, on page 287: "So the service of garnishee papers upon the garnishee operates as an equitable levy upon such of the debtor's property and credits as were at the time of such service in the hands of the garnishee," and so it was held that jurisdiction of the property in the hands of the garnishee was obtained by the service of the summons on the garnishee. This premise, and the conclusion therefrom, are undoubtedly correct; but it does not follow that jurisdiction may not be lost after it has been obtained. We know of no reason why the lawmaking power may not provide that failure to perform a certain act after jurisdiction of the *res* has been obtained shall divest the court of jurisdiction *ab initio*. The provision that a default in performance of a certain act shall render the service on the garnishee " void and of no effect from the beginning " would seem very clearly to divest the court of the jurisdiction provisionally obtained by the service on the garnishee. The obtaining of the jurisdiction is one of the effects of the service on the garnishee, but, if that service becomes of " no effect from the beginning," how can it be said that the jurisdiction remains? Such a holding is directly in the teeth of the plain words of the statute. We are not called upon to consider what might be the effect of a voluntary appearance of the main defendant in the garnishee proceedings where the rights of no other creditors are involved, and consequently do not decide that question. We enter-

tain no doubt of the right of a creditor who has obtained an interest or lien upon the property by subsequent garnishment to raise the question.

We therefore hold that the circuit court was right in dismissing the garnishee proceedings in favor of *Anderson*.

2. As to the damages. The court allowed the garnishees all their expenses incurred in finishing the work upon the lumber which Hansen agreed to perform, including pay for their time and traveling expenses. These were all the elements of damage or offset which the garnishees claimed in their answer; and, further, it appears from *Boynton's* own evidence that the garnishees agreed with the creditors, before taking possession of the lumber, that: "We should go on and complete as fast as possible Mr. Hansen's part of the contract, and keep track of the expenses; and whatever there was due after we got through was to be turned over in these garnishee proceedings." No claim appears of any other damages until the trial, when a claim is made, against objection, that by reason of delay in obtaining lumber, caused by the absconding of Hansen, the garnishees were unable to fill contracts for the sale of twenty or twenty-five carloads of lumber which they had made after the last contract was made with Hansen, and were also compelled to carry over a large amount of lumber into the next season, which they could probably otherwise have disposed of in the fall of 1891; thus keeping their capital idle and losing the interest on the money. We have carefully examined the testimony, and regard it as entirely inadequate to sustain these claims of damage. It does not appear that any such sales and shipments as twenty-five car loads of lumber at one time were within the contemplation of the parties to the contract when it was made. The contract specifies no time for shipment, but evidently contemplates gradual shipments, not to be necessarily completed until March 1, 1892; and it does not clearly appear

that the garnishees did not receive the lumber as early as was within the contemplation of the parties, and within the reasonable construction of the terms of the contract. In view of the indefinite and uncertain character of the evidence and of the facts that the garnishees have had allowed to them all the damages which they claimed in their answers (which answers were served about the middle of November, 1892), and that they stipulated with the garnishing creditors for just such an allowance as they have received, we do not think the court erred in denying the garnishees the additional damages they now claim.

A question is raised as to the judgment for interest. It is said that the allowance of interest from January 1, 1893, was erroneous, and that no interest should have been allowed. There is no sufficient exception in the record upon which to base this objection. The exception is a general exception to the entire finding which finds the principal and interest due. This is insufficient to raise the question as to whether the allowance of interest was proper. *Estate of Kessler, post,* p. 660.

*By the Court.*— Judgment affirmed on both appeals.