[File No. 6282.]

FIRST NATIONAL BANK OF DICKINSON, NORTH DAKOTA, a Corporation, Appellant, v. RUDOLF ROHLIK, Respondent.

(262 N. W. 458.)

Opinion filed September 10, 1935.

*G. R. Brainard,* for appellant.

*C. H. Starke,* for respondent.

Burr, J. Plaintiff appeals from an order of the district court substituting the executrix for the original defendant; changing the place of trial from Stark county to Dunn county; releasing the garnishment involved; and specifies each of these three acts as error.

Plaintiff brought the action in Stark county for a balance alleged to be due on a certain promissory note. The defendant was absent from the state; property belonging to the defendant was garnished in the hands of one Mike Wolberg; before the time for answer expired, the defendant made and served a written demand for change of the place of trial from Stark county to Dunn county claiming the latter county was the county of his residence. In his answer the defendant alleged the property garnished was not worth to exceed the sum of four hundred dollars and "claimed said property is exempt from garnishment, attachment or execution sale."

No affidavit for change of venue was served with the written demand and the demand was refused by the plaintiff. The defendant died November 9, 1933, and on February 27, 1934, the county court of Dunn county appointed his widow, Josephine Rohlik, administratrix of the estate.

Counsel for the administratrix moved the court for an order substituting her as party defendant. There is nothing in the record to show this motion was controverted in any way. The court granted the motion and at the same time heard her motion for change of venue, and her demand for the release of the property from garnishment.

There was no error in ordering the substitution of the administratrix as party defendant. Section 7408 of the Comp. Laws says: "No action shall abate by the death . . . of a party . . . . if the cause of action survives or continues. In case of the death . . . of a party, the court on motion at any time within one year thereafter . . . . may allow the action to be continued by or against his representatives or successor in interest."

Section 8544a15 of the Supplement says: "All actions which may be pending against a deceased person at the time of his death, may, if

the cause of action survive, be prosecuted to final judgment, and the executor or administrator may defend the same. If any judgment shall be rendered against the executor or administrator the court rendering it shall certify the same to the county court, and the amount thereof shall be paid in the same manner as other claims allowed against the estate."

Certainly the cause of action for a balance claimed to be due on a promissory note survived.

The defendant, at the time of the service of the complaint upon him, claimed to be a resident of the county of Dunn. Consequently such action as this should be tried therein, but if commenced in another county it may be tried in that county, "unless the defendant before the time for answering expires demands in writing that the trial be had in the proper county and the place of trial be thereupon changed by consent of the parties, or by order of the court as provided in this section." Comp. Laws, §§ 7417 and 7418. The court may change the place of trial "when the county designated for that purpose in the complaint is not the proper county," and the written demand for change of place of trial was seasonably made.

The right of the defendant to have the trial of this action in the county in which he resided was an absolute right; and when he was entitled to such change of venue, and served his written demand for such change of venue before "expiration of the time for answer he preserved the right to a change of venue and if the plaintiff refused to agree to such change the trial court may grant an application for a change after the time for answer expired." Hinsey v. Alcox, 38 N. D. 52, 164 N. W. 296; Clark v. Cleveland, 60 N. D. 460, 235 N. W. 342. Such right is preserved to the defendant by the making of the demand. Burg v. Farmers' Mut. Fire & Lightning Ins. Co. 59 N. D. 407, 230 N. W. 214.

It is the place of trial of the action that is to be changed. The substitution of administratrix does not change the situation. "The substituted party takes up the prosecution or defense of the action at the point where the original party left it. He is entitled to all the rights possessed by his predecessor, and, on the other hand, assumes all his burdens and liabilities." 20 Enc. Pl. & Pr. 1061; Bixby v. Blair, 56

Iowa, 416, 9 N. W. 318; Crary v. Kurtz, 132 Iowa, 105, 105 N. W. 590, 591, 109 N. W. 452, 119 Am. St. Rep. 549; Brand v. Smith, 99 Mich. 395, 58 N. W. 363; Borneman v. Wilson, 54 L. J. Ch. N. S. 631, L. R. 28 Ch. Div. 53—C. A.

This brings us to the merits of the controversy over the change of venue. When the administratrix made the demand she filed an affidavit which had been made by the original defendant while "an inmate of the United States Veterans' Hospital at Dayton, Ohio;" and an affidavit by C. H. Starke—his counsel and her counsel. The affidavit of Rudolph Rohlik showed that he had his home upon a farm in Dunn county; that he owned the land, had lived thereon for twenty years, and had no other home; that he was married and living with his wife on these premises and made their home there until February 17, 1933, when, by reason of illness and the necessity for medical and surgical attention he went to Ohio to get this necessary attention; that he was destitute, and went to Ohio because it was the former home of his wife and that they would be able to get the necessary care during the time of his illness and convalescence; that while there he made arrangements with Mike Wolberg to rent the farm for a year, subject to the right of renewal and that this lease was made because of the illness of affiant and he did not know whether he would be able to return the next year and farm. This affidavit was made September 4, 1933. The affiant died in the following November. The affidavit of Mr. Starke is to the effect that the said Rudolph Rohlik was at the time of his death, and for more than fifteen years had been a resident of the county of Dunn.

The plaintiff filed the rebutting affidavit of T. A. Tollefson wherein it is set forth that Rudolph Rohlik had lived· in Dunn county in the winter of 1932 and 1933, leaving there for Ohio, taking his family and his personal belongings but "leaving his cattle, horses, machinery, and equipment on his homestead . . . all his machinery, horses, equipment were heavily mortgaged to its full value and more, and that his homestead was heavily encumbered, that he sold or gave away his household furniture and left without the knowledge of his creditors." Upon information and belief he states that on or about October 17, 1933 the defendant "not having in the meantime returned to North

Dakota and to his alleged home in Dunn county, and with his wife, Josephine, joining therein, made, executed and acknowledged the execution of a warranty deed of and to the above described homestead," wherein he sold the homestead to one Joseph Kubik, and that the grantee has gone into possession.

The trial court decided that at the time of the commencement of this action Rudolph Rohlik was a resident of Dunn county. With this we agree. His homestead was in Dunn county and he had lived on this land for twenty years. The allegation of illness and the fact of going to Ohio are not controverted. That he was indeed ill is indicated by the fact that he died shortly afterwards. His wife returned to Dunn county, was appointed administratrix—on the theory that she was a resident of Dunn county and interested in the estate—and is now substituted as party defendant representing the estate. There was no error in granting the application for change of venue.

The last specification of error involves the action of the court in dissolving the garnishment, and releasing the garnishee from any further liability by reason of such garnishment, upon the delivery of the property to the administratrix.

The garnishee made a disclosure wherein he described some personal property belonging to Rudolph Rohlik and admitted "liability to the extent of the possession and control of such personal property; that except therefor, he is upon no account and in no manner indebted to the defendant, Rudolph Rohlik, or under any liability to him." No issue was taken on this disclosure. No bond to dissolve the garnishment was furnished nor was the issue as to whether the property is exempt tried out.

The trial court held that "the death of the defendant prior to the rendition of judgment against him dissolves the garnishment proceedings;" citing the rule laid down in 28 C. J. 361.

Citations of authority from other jurisdictions are of little value to us, in most cases, as garnishment is peculiarly a creature of statute, and statutes vary. In many jurisdictions, and with many textbook writers, garnishment and attachment are considered together, and the terms used almost interchangeably. We must look to our own statute for the scope of this provisional remedy. In this state, as shown in

Park, Grant & Morris v. Nordale, 41 N. D. 351, 170 N. W. 555, garnishment is a separate and distinct remedy from attachment and the distinctions are set forth in the case cited.

Garnishment proceedings are not a levy upon the property. "A garnishment proceeding is an action; it creates no specific lien; it seeks to hold the garnishee to a personal liability and judgment dependent upon his liability to the defendant. It is a remedy separate and distinct from attachment or execution." Sargent County v. State, 47 N. D. 561, 182 N. W. 270.

Garnishment in its very nature is a warning and order to a third party, a debtor of the defendant, not to turn over to the defendant the property of the defendant held by the third party. The effect of garnishment is to segregate the property involved from property which the debtor may handle as he sees fit, and which prevents the debtor from controlling the property until the matter is determined in his favor. The property was not attached, nor was any levy on execution made for no judgment had ever been entered. Section 7583 of the Compiled Laws says: "From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property . . . in his possession or under his control belonging to the defendant, or in which he shall be interested, to the extent of his right or interest therein . . . ." This is a personal liability.

It is argued that though we have held "garnishment creates no specific lien," (Sargent County v. State, supra) yet there is an "equitable lien upon such of the debtor's property and credits as were at the time of such service in the hands of the garnishee," (Winner v. Hoyt, 68 Wis. 278, 32 N. W. 128; Globe Mill. Co. v. Boynton, 87 Wis. 619, 632, 59 N. W. 132; Morawetz v. Sun Ins. Office, 96 Wis. 175, 178, 71 N. W. 109, 65 Am. St. Rep. 43; Maxwell v. Bank of New Richmond, 101 Wis. 286, 77 N. W. 149, 70 Am. St. Rep. 926) and doubtless the order to the garnishee to hold the property subject to the order of the court creates a claim thereto which would subject the property to the interest of the creditor upon the attaining of judgment, if still held by the garnishee.

But whatever interest in the property is created by the initiation of garnishment proceedings, it is clear that in this state they are not

identical with attachment. As stated in Foreman Bros. Bkg. Co. v. Handy, 229 Mich. 635, 201 N. W. 951, "While garnishment proceedings are in the nature of an equitable attachment, they are not in fact attachment proceedings." Under our statute there is a complete lien—not merely an equitable lien—upon attached property immediately upon levy of attachment being made. (Comp. Laws, § 7547.)

However, the death of the debtor before a judgment is rendered profoundly alters the relationship of the parties. Section 8806 of the Compiled Laws of 1913 says: "If an action pending against the decedent at the time of his death is prosecuted to judgment against his representatives or successors in interest, the judgment does not become a lien but is payable in the course of administration." This section has no limitations. It does not say the judgment does not become a lien on real property and therefore by inference permit the ripening of a lien against personal property. Had judgment been rendered against the debtor prior to his death, then it could be said the equitable lien had ripened into a lien and execution to enforce this lien might be had under subdivision 2 of § 8807 of the Compiled Laws. But death before judgment effectually prevents the completion of a lien, and certainly if there was no actual lien on the property prior to death, the rights of the creditor could not ripen into a lien thereafter. Death is a contingency which must be taken into calculation. The death of the debtor profoundly affects his estate, and his death profoundly affects the creditor also. However unfortunate it may be for the creditor, nevertheless our code places the loss upon the creditor, and unless "the judgment is for the recovery of real or personal property or the enforcement of a lien thereon," no execution shall issue upon any judgment whether rendered against the intestate in his lifetime or against his successor in interest. (Comp. Laws, § 8807.) As pointed out in the case of Sargent County v. State, supra, a garnishment proceeding creates no specific lien, and if it creates no specific lien, then judgment against the successor in interest is not for the enforcement of a lien. Therefore no execution can issue and the judgment rendered is a mere debt against the estate.

Our probate code gives a complete simple and inexpensive scheme for the settlement of estates, and however unfortunate it may be for

the plaintiff that it cannot get a lien on the property, it is simply because the statute says no lien shall follow a judgment obtained in an action prosecuted to judgment after the death of the decedent. Our statute does not contemplate interference with the administrator's control of the estate. Section 8708 says: "Every person having . . . property of a decedent without authority from the executor or administrator is liable to account for the same at its full value and shall not be allowed to retain or deduct therefrom any debt due from such decedent."

Section 8713 makes provision for compelling a third person to turn over property belonging to the estate and shows that such person "may be ordered and compelled to deliver the same to the executor or administrator or to produce the same for inventory and appraisement as the case requires, unless he interposes a written answer duly verified to the effect that he is the owner of the property or is entitled to possession thereof by virtue of a special property therein or by virtue of a lien under which he obtained possession in the life time of the testator."

Many cases may be cited, such as Hawley v. Isaacson, 117 Wash. 197, 200 P. 1109, 21 A.L.R. 268, to the effect that despite the general rule as set forth in 20 Cyc. 1129 and 14 Am. Enc. of Law 891, and certain cases cited in the body of the opinion, the defendant's death after the institution of the garnishment proceedings "did not have the effect of dissolving the garnishment proceedings or depriving plaintiff of his rights accrued thereby;" but such decisions appear to be based upon the theory that the initiation of garnishment proceedings created a specific lien which could be treated the same way as an attachment. As pointed out before, statutory provisions differ to such an extent that citations from various jurisdictions are of little value. We are satisfied there is no lien on the property in the sense that attachment gives the lien. Before the lien of garnishment can attach and the property held subject to a judgment there must be a levy of an execution and thus the lien of garnishment be completed. The death of the debtor prevents this.

The creditor, in the absence of any specific lien against the property of the defendant, has no special claim against the estate. There-

fore he has no special claim against the property in the hands of the garnishee. Neither can he obtain a special preference against that property. He is merely a general creditor of the estate. All of the property of the estate is held for the benefit of all of the creditors. Hence no judgment could be rendered against the garnishee nor could the property in his possession be subjected to the judgment obtained against the decedent's estate. The trial court was not in error in dissolving the garnishment as maintenance of the same could not avail the plaintiff.

The order is affirmed.

BURKE, Ch. J., and NUESSLE, J., concur.

MORRIS, J., did not participate.

CHRISTIANSON, J. I agree with those parts of the opinion prepared by Mr. Justice Burr which relate to the matters covered by paragraphs 1 and 2 of the syllabus; but I am not prepared to agree with those parts of the opinion which relate to the matters covered by ¶ 3 of the syllabus.

It is true garnishment is an action and creates no specific lien (Sargent County v. State, 47 N. D. 561, 182 N. W. 270); nevertheless the service of process upon the garnishee operates as an equitable levy upon such property of the defendant as is in the hands of the garnishee at the time of such service (Winner v. Hoyt, 68 Wis. 278, 32 N. W. 128; Globe Mill. Co. v. Boynton, 87 Wis. 619, 59 N. W. 132; Maxwell v. Bank of New Richmond, 101 Wis. 286, 77 N. W. 149, 70 Am. St. Rep. 926); and such levy creates a right in favor of the plaintiff in the property so held by the garnishee and described in his affidavit admitting liability (Hawley v. Isaacson, 117 Wash. 197, 200 P. 1109, 21 A.L.R. 268).

In this case garnishment process was duly served in August, 1933. The garnishee admitted liability. The defendant died November 9, 1933. In my opinion the death of the defendant did not result in a dismissal of the garnishment action, or in a dissolution of the equitable levy, and the loss of the plaintiff's right in the property garnisheed.

The prevailing opinion is predicated largely on § 8806, of the pro-

bate code. But that section does not purport to relate to, or prescribe any rule as to the effect of, the lien or right of lien obtained by levy in attachment or service of garnishment process before the death of the defendant. It relates only to the status and effect of a judgment rendered, against the representatives or successors in interest of a deceased person, in an action pending against the decedent at the time of his death.