[No. 16459.  Department One.  September 26, 1921.]

# R. S. HAWLEY, *Respondent*, v. ALMA F. ISAACSON, *Appellant*.[1]

BILLS AND NOTES (22)—CONSTRUCTION—ATTORNEY'S FEES.  A promissory note agreeing to payment of "———— dollars" for attorney's fees in case of suit for collection is an express stipulation for a reasonable amount as an attorney's fee.

ABATEMENT AND REVIVAL (18, 19)—GARNISHMENT (57)—DEATH OF PARTY—CAUSES SURVIVING—EFFECT ON GARNISHMENT—DISSOLUTION.  The death of a defendant to an action after garnishment proceedings instituted against a debtor, who answers admitting liability to the principal defendant, does not dissolve the garnishment proceedings.

Appeal from a judgment of the superior court for King county, Allen, J., entered January 7, 1921, in favor of the plaintiff, in an action on promissory notes, tried to the court.  Affirmed.

*C. H. Steffen* and *Andrew J. Balliet,* for appellant.
*Bronson, Robinson & Jones,* for respondent.

BRIDGES, J.—The plaintiff brought suit against Gust F. Isaacson to obtain judgment upon several promissory notes.  The notes were on a printed form and contained the following clause with reference to attorney's fees: "and in case suit or action is instituted to collect this note, or any portion thereof, I promise and agree to pay, in addition to the costs and disbursements provided by statute ................ Dollars in like gold coin for attorney's fees in said suit or action."  After the commencement of the suit, the original defendant died, and the executrix of his estate was substituted.  The case was tried by the court without a jury, and judgment rendered in favor of the

[1]Reported in 200 Pac. 1109.

plaintiff, which judgment included an attorney's fee. The defendant has appealed.

The first question presented is whether any attorney's fee may be allowed on such a note as that above quoted. But one or two cases directly in point have been cited, or found by us. Section 474, Rem. Code (P. C. § 7456), provides: "The measure and mode of the compensation of attorneys and counsellors shall be left to the agreement, express or implied, of the parties . . ." Section 475 of Rem. Code (P. C. § 192), reads as follows:

"In all cases of foreclosure of mortgages, and in all other cases in which attorney's fees are allowed, the amount thereof shall be fixed by the court at such sum as the court shall deem reasonable any stipulations in the note, mortgage or other instrument to the contrary notwithstanding; but in no case shall said fee be fixed above the contract price stated in said note or contract."

In the case of *Cloud v. Rivord*, 6 Wash. 555, 34 Pac. 136, the note in suit, in so far as it referred to attorney's fee, read as follows:

" 'If suit or action shall be brought to collect the principal or interest, we promise to pay a collection and attorney's fee in said suit or action, which fee shall be taxed as the attorney's fee in the judgment rendered.' "

It was there properly held that the note constituted a promise to pay a reasonable attorney's fee, which should be fixed by the court. That case, however, lends but little light to this one.

In the case of *Scandinavian American Bank v. Long*, 75 Wash. 270, 134 Pac. 913, the note sued upon, in so far as it had reference to attorney's fees, was in the identical words of the one here sued upon, except a pen line was drawn through the blank. The trial court

there allowed an attorney's fee; this court holding such to be error, said:

"We think it was clearly the intention of the parties in this note to provide for no attorney's fee, because the space left for the amount of the attorney's fee, whether a reasonable or fixed sum, was left blank by drawing the pen across the blank. The clear indication from the note itself is that no attorney's fee was to be allowed."

By drawing a line through the blank space on the note the maker manifestly intended that no attorney's fee was to be allowed. No such manifestation, however, is evidenced in this case. 8 C. J., at p. 1098, lays down the following rule:

"A provision for attorney's fee is enforcible although the amount is left blank."

In the case of *Strough v. Gear,* 48 Ind. 100, the note provided for "An attorney's fee of .............. % if suit be instituted on this note." The court said:

"It is claimed that as the per centum is not fixed in the note, there was no contract to pay any sum for attorney's fees. We think otherwise. We think the appellees were entitled to recover reasonable attorney's fees. The sum allowed was less than that proved. The words 'of .......... per cent.' should be regarded as surplusage."

In this case, if the maker of the note intended that he would not be liable for any attorney's fee in the event of suit, he should have stricken that provision. By the express words of the note the maker agreed to pay an attorney's fee. The only thing lacking is the amount to be paid. It must be held that the maker agreed to pay a reasonable amount as attorney's fee, and that that amount was properly fixed by the court.

A more serious question, however, remains to be determined. At the time the suit was brought, the plaintiff caused to be issued out of the court a writ of gar-

nishment, which was served on the Puget Sound Bridge and Dredging Company, and on May 19, 1919, the garnishee answered, admitting that it was indebted to the defendant in a sum in excess of $2,000. After the original defendant had appeared in the action by motion, but before answer, and after the answer of the garnishee admitting its liability to the defendant, but before judgment thereon, and on May 29, 1919, Isaacson was killed in an accident. After his death, Alma F. Isaacson was appointed administratrix of his last will and testament, and by agreement of the parties she was substituted as defendant. After the death of the original defendant, and in pursuance of stipulation between the plaintiff and the substituted defendant, the garnishee paid to the clerk of the court the money it had owed the original defendant. After judgment for the plaintiff had been entered, he moved the court to direct the clerk to pay to him sufficient of the money in his hands (the same having theretofore been paid to him by the garnishee) to satisfy his judgment, and at about the same time the substituted defendant moved that the garnishment be quashed and the clerk ordered to pay the money to the estate of the deceased. The court granted plaintiff's motion.

Appellant contends that, because the debtor and original defendant died before judgment was rendered against him, and before judgment was rendered against the garnishee, the death abated the garnishment proceedings, and that any moneys owing by the garnishee should be paid into the estate of the deceased for distribution, as provided by law. On the contrary, the respondent contends that it had acquired a right to the moneys garnished, and the death of the defendant could not have the effect of dissolving the garnishment proceedings, or depriving him of his rights acquired by the garnishment.

In 20 Cyc. 1129, it is stated that:

"The general rule is that the death of the principal defendant prior to the rendition of judgment against him thereby dissolves the garnishment proceedings."

14 Am. & Eng. Ency. Law (2d. ed.), 891 says:

"The effect of the death of the defendant upon garnishment proceedings, depending as it does upon the construction of dissimilar statutes, is not the same in the various states. In some jurisdictions it is held that the death of the defendant dissolves the garnishment, while in others the contrary is maintained, and the latter is especially true where judgment has been rendered against the defendant before his death."

The rule as laid down by these two authorities is manifestly based upon certain cases cited by them as supporting the rule, but which cases for the most part have no application here. Those cases decided that a writ of attachment or garnishment was dissolved or abated by the death of the defendant, because the statutes in the states where those cases were decided expressly so provided. In a number of states the statutes expressly provide that the death of the defendant will work a dissolution of the garnishment proceedings if his estate be declared to be insolvent. Some of the cases so holding are as follows: *Farnsworth v. Page*, 17 N. H. 334; *Dow v. Batchelder*, 45 Vt. 60; *Wilmarth v. Richmond*, 11 Cush. (Mass.) 463; *McIlroy v. McIlroy*, 208 Mass. 458, 94 N. E. 696.

It must be conceded, however, that there are a few cases which are not affected by local statutes, holding that the death of the defendant terminates garnishment proceedings, and that the money garnished must be turned into the estate of the deceased. The cases which have come to our attention which so hold are as follows: *Myers v. Mott*, 29 Cal. 359, 89 Am. Dec. 49; *McEachin v. Reid*, 40 Ala. 410; *Reynolds v. Howell*, 1 Marvel (Del.) 52, 31 Atl. 875. The opinion in the first

case cited is the one most thoroughly considered and is by a bare majority of the court. These cases proceed upon the idea that the rights acquired by attachment or garnishment are not fixed but are wholly dependent upon the subsequent recovery of a judgment against the defendant, and if no judgment be obtained, then the garnishment or attachment proceedings must abate; that the plaintiff can acquire no rights which he may enforce,. till he has recovered judgment, and that since no judgment can be taken against the decedent's representative, other than to find the amount owing and direct that it shall be paid in due course of administration, the garnishment or attachment must abate. There are cases, however, which are not influenced by local statutes, and which hold that the death of the defendant debtor before judgment does not cause an abatement or termination of the garnishment or attachment proceedings. See *Mitchell v. Schoonover,* 16 Ore. 211, 17 Pac. 867; *Moore v. Thayer,* 10 Barb. (N. Y.) 258, 3 Code Rep. 176, 6 How. Prac. 47; *Bieber v. Weiser,* 1 Wood. Dec. (Pa.) 473; Shinn, Attachments and Garnishments, p. 1113, § 682.

Under such confusion of the text writers and authorities, we must elect to adopt such theory and follow such authorities as appeal to us. While it is true that, under our statutes, the plaintiff does not obtain by his garnishment any fixed and enforceable lien on the money garnished, till he shall have obtained judgment against the defendant, yet he does, prior to judgment, obtain a prior right which cannot be defeated except by failing to obtain his judgment. He may not have a specific lien by virtue of his garnishment, but he certainly acquires a right in the thing garnished. The very authorized purpose of the garnishment is to hold the thing garnished as security for the payment of any judgment he may obtain. Under the statute, the gar-

nishee may not lawfully dispose of the thing garnished, but must hold it subject to the order of the court; the debtor may not collect, assign or in any way dispose of the thing garnished. No person, by a subsequent garnishment or proceeding, can acquire a right in the subject of the garnishment which will be senior or prior to the rights of the first garnishor. Why, therefore, upon principle, should the mere death of the debtor deprive the plaintiff of a right of which he could not be deprived during the life of the debtor? Why should the creditor be deprived of the fruits of his caution and thrift, only because of the debtor's death? The legal representatives should take the property of the deceased debtor subject to the inchoate lien or rights which the creditor obtained by garnishment against the same property in the hands of the live debtor. If, without express provisions of statute, death will not defeat a mortgage, or mechanic's, or any other kind of lien, why should it defeat the inchoate lien or statutory right acquired by garnishment? A receiver will always take property subject to all mortgages, liens, rights and equities. He takes it in just the condition he finds it. We know no good reason why the same rule should not apply in a case of this character. Our statute to the effect that no execution or writ for the enforcement of a judgment against the legal representatives of a deceased shall issue is a general one and applies to proper cases and circumstances. But it is not exclusive and was not meant to cover all instances. As evidence of this idea see § 119 of the 1917 Probate Code, that if a judgment obtained during the life of the debtor "be a lien on any property of the decedent, the same may be sold for the satisfaction thereof, and the officer making the sale shall account to the executor or administrator for any surplus in his hands." It seems to us that the conclusion at which we have ar-

rived brings about real justice, and is in accord with our general statutes and the spirit of our laws.

We choose to adopt the theory of the dissenting opinion in the case of *Myers v. Mott, supra,* where it is said:

"The moment the attachment is levied, a lien upon the property attached is acquired. . . . It is a right vested upon the conditions prescribed by the statute. The law favors the diligent and not those who sleep on their rights. The plaintiff incurred the costs of a suit to secure the right given by the statute, and by this means acquired for himself, to the exclusion of all others, the statutory lien on the defendant's property, and a right to be first paid out of its proceeds. This right became vested, and being once vested should not be divested, unless by virtue of some express statutory provision, or by necessary implication from provisions bearing upon the subject-matter. . . . . In this case, by the attachment the plaintiff under the statute acquired a lien upon, and a right to have this demand satisfied out of, the property attached, and, as I think, by no express provision of the statute, or necessary implication from statutory provisions, was the lien lost, or right impaired by the subsequent death of the defendant."

The judgment is affirmed.

Parker, C. J., Fullerton, Holcomb, and Mackintosh, JJ., concur.