[No. 16989.  Department Two.  May 16, 1922.]

*In the Matter of the Estates of* ANDREW HACKETT and DELLA F. HACKETT.[1]

JUDGMENT (244)—EXECUTORS AND ADMINISTRATORS (91-1, 92)—CLAIMS—PRIORITIES—JUDGMENT LIEN—RIGHTS OF CREDITORS—STATUTES—CONSTRUCTION.  Where a judgment was obtained during decedent's lifetime which was a lien upon his property, under Rem. Comp. Stat., §§ 445, 459, the property could be sold on execution after his death, independent of the administration of his estate, the judgment lien taking precedence over the preferred claims in probate under Id., § 1541; in view of Id., § 1489 of the probate code which provides that, if a judgment be a lien on any property of the decedent, the same may be sold in satisfaction thereof, and the officer making the sale shall account to the executor or administrator for any surplus in his hands; since Id., § 1541, giving precedence to certain claims over judgments rendered against deceased in his lifetime, which are liens upon real estate and on which execution "might have been issued," does not extinguish the prior lien and applies only where such judgment was made the subject of a general claim against the estate, without attempt to enforce the same by execution against the property.

ARBITRATION AND AWARD (16)—APPEAL (78)—DECISIONS REVIEWABLE—FINAL ORDERS—SUBMISSION OF CONTROVERSY—CONCLUSIVENESS.  A stipulation whereby issues in probate as to the priorities of claims were submitted to the judge "for his determination," was not a submission to the judge as an arbiter whose decision was to be final, but was a submission for judicial determination from which an appeal would lie.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered October 6, 1921, denying the right of a judgment creditor to subject real property to the lien of a judgment under an execution

[1] Reported in 207 Pac. 11.

issued thereon after the death of the judgment debtors.
Remanded for correction.

*Charles Grant,* for appellant.

*S. S. Bassett,* for respondent.

PARKER, C. J.—This is a controversy over the claimed
right of Edward Covell, a judgment creditor of Andrew
Hackett and the community consisting of Andrew and
Della F. Hackett, both deceased, to have sold, under
an execution issued upon the judgment after the death
of both Mr. and Mrs. Hackett, real property situated in
Spokane county and owned by Mr. Hackett and the
community at the time of the rendering of the judg-
ment, upon which real property the judgment became
a lien by virtue of its rendition while they were alive.
From the order and judgment which in effect denied the
right of Covell to have such execution and sale upon
the judgment after the death of Mr. and Mrs. Hackett,
Covell has appealed to this court.

The controlling facts may be summarized as fol-
lows: The controversy was submitted to the superior
court upon a statement of facts agreed upon by coun-
sel for the administratrix and Covell. The estates of
Mr. and Mrs. Hackett, both deceased, are being admin-
istered in one probate proceeding; the agreed state-
ment being filed and this controversy submitted to the
court therein. Prior to the deaths of Mr. and Mrs.
Hackett, there was rendered in the superior court for
Spokane county a judgment against Mr. Hackett and
the community consisting of Mr. and Mrs. Hackett in
favor of Covell for the sum of $12,368.91, which judg-
ment it is conceded then "became and is a general lien
upon the real estate of said Andrew Hackett, deceased,
and upon any community interest in real estate of said
Andrew Hackett and Della Hackett, deceased." This

refers only to real estate in Spokane county. Thereafter both Mr. and Mrs. Hackett died and Clara McMillan was duly appointed and qualified as administratrix of their estates by the probate court for Spokane county, in which court the estates are now being administered in one probate proceeding. A number of claims have been duly established against the estates which will take precedence over the judgment claim of Covell under § 171 of our probate code (Rem. Comp. Stat., § 1541), viewing Covell's judgment claim merely as a general debt of the estate of Mr. Hackett and the community, apart from the right Covell may have to subject the real property of Mr. Hackett and the community, situated in Spokane county, to the payment of his judgment in preference to any other charge against that particular real property. Covell filed his judgment claim as a general claim against the estate of Mr. Hackett and the community, but, as it is stipulated: "said Edward Covell does not submit his said judgment claim as a claim to be paid in the administration of said estate other than as a claim for payment of any deficiency remaining after sale of real estate on which said judgment is a lien out of any other assets of said estates." After the death of both Mr. and Mrs. Hackett, Covell caused execution to be issued upon his judgment, entirely independent of the probate proceeding, which was followed in due course by sale thereunder of the interests possessed by Mr. Hackett and the community, at the time of the rendering of the judgment, in certain real property in Spokane county upon which the judgment had become a lien. At about the time Covell caused the execution to be issued, the administratrix obtained an order from the court in the probate proceeding authorizing the sale of the same property by the administratrix to pay the debts of the es-

tate. This order of sale made by the court in the probate proceeding was evidently rested by the court upon the theory that there could be no sale of real property of the deceased in satisfaction of Covell's judgment upon any execution issued after their deaths had occurred. This view of the law entertained by the judge of the superior court was evidently rested by him upon § 119 of our probate code, Rem. Comp. Stat., § 1489. The question as to whether or not Covell was entitled to execution and sale so made in his behalf was submitted to the court for decision by the following language found in the stipulation:

"That in order to save the costs of obtaining an order setting aside said sale [the execution sale] by said Edward Covell made as aforesaid, and to determine fully and definitely the priority of said claims of said Covell and others, hereinabove set out, it is hereby agreed by and between the parties hereto, that said issue shall be submitted to the judge of the above entitled court, on the 25th day of May, 1921, at the hour of ten o'clock A. M. of said day, or as soon thereafter as same can be heard, for his determination and decision and classification as to the prior rights of all the claims hereinabove set out, and that the sale by said Edward Covell as aforesaid shall be subject to such decision as to priority of claims."

The matter came on for hearing in the superior court accordingly, and resulted in an order and judgment which is in effect a decision by the superior court that Covell was not entitled to have execution and sale of the real property in satisfaction of his judgment independent of the probate proceeding; and that his judgment claim is of the sixth class in order of preference, not only as a general claim against the estate, but also as a judgment lien claim against the particular real property sold under the execution; the court holding in effect that certain claims against the estates, estab-

lished as of the first, second and fifth classes enume-
rated in § 171 of our probate code, should be paid in
preference to Covell's judgment, viewing that judg-
ment not only as a general charge against the estate,
but also as a lien charge against the particular real
property upon which it became a lien at the time of its
rendition.

Has appellant Covell the right to have execution
upon his judgment and sale of the property in ques-
tion made thereunder, independent of the probate pro-
ceeding, Mr. and Mrs. Hackett having died after the
rendering of the judgment and before the issuing of
the execution? This question is to be answered by
reference to the following statutory provisions relat-
ing to the lien of judgments and the order of paying
debts of estates of deceased persons in course of ad-
ministration:

"The real estate of any judgment debtor and such
as he may acquire, shall be held and bound to satisfy
any judgment . . . of the superior . . . court
. . . for the period of five years from the day on
which said judgment was rendered, and such judgments
shall be a lien thereupon to commence as follows: Judg-
ments of the superior court of the county in which real
estate of the judgment debtor is situated, from the date
of the entry thereof; . . ." Rem. Comp. Stat.,
§ 445.

This statute remains in full force, except that, by the
provisions of Rem. Compiled Statutes, § 459, later
enacted, the judgment lien continues for a period of
six years. *Seattle Brewing & Malting Co. v. Donofrio,*
59 Wash. 98, 109 Pac. 335; *Catton v. Reehling,* 78 Wash.
187, 138 Pac. 669; *Kelleher v. Wells,* 87 Wash. 323, 151
Pac. 823.

"When any judgment has been rendered against the
testator or intestate in his lifetime, no execution shall
issue thereon after his death, but it shall be presented

to the executor or administrator, as any other claim, but need not be supported by the affidavit of the claimant, and if justly due and unsatisfied, shall be paid in due course of administration: *Provided, however,* That if it be a lien on any property of the deceased, the same may be sold for the satisfaction thereof, and the officer making the sale shall account to the executor or administrator for any surplus in his hands." Probate Code, § 119; Laws of 1917, p. 675; Rem. Comp. Stat., § 1489.

"The debts of the estate shall be paid in the following order:

"1.  Funeral expenses in such amount as the court shall order.

"2.  Expenses of the last sickness, in such amount as the court shall order.

"3.  Wages due for labor performed within sixty days immediately preceding the death of decedent.

"4.  Debts having preference by the laws of the United States.

"5.  Taxes, or any debts or dues owing to the state.

"6.  Judgments rendered against the deceased in his lifetime which are liens upon real estate on which executions might have been issued at the time of his death, and debts secured by mortgages in the order of their priority.

"7.  All other demands against the estate." Probate code, § 171; Laws of 1917, p. 692; Rem. Comp. Stat., § 1541.

It is argued in behalf of the administratrix that, while Rem. Comp. Stat., § 445, in terms makes the judgment a lien upon the real property of the judgment debtor, such lien ceases to be effective as a lien upon the real property of the judgment debtor, after his death, superior to the five classes of debts and charges which may be established against his estate, mentioned in the first five subdivisions of § 171 of the probate code, above quoted. It will be conducive to a clear comprehension of the conditions of our problem to be reminded that there is a marked distinction between the ques-

tion of the order of priority of established claims against an estate of a deceased person, viewed as general claims against all property indiscriminately, real and personal, which such deceased person may leave; and the question of priority of liens upon real property situated in a given county, which such deceased person may leave. As to general claims against an estate, none of which are liens against any particular property or class of property of the estate, it seems plain that they are to be paid in the order mentioned in § 171 above quoted; and that in so far as Covell is seeking payment of his judgment out of the estate generally— which he is here seeking only to the extent of any deficiency there may be due thereon after exhausting the real property upon which it is a lien—his claim must take rank as one of the sixth class mentioned in § 171 above quoted. But that is not the real question here presented. We are here inquiring, not as to his preference right as a creditor having a claim chargeable against all property, real and personal, wherever situated, which might be owned by the estates, but as to his right to have his judgment claim satisfied out of the particular property upon which it became a lien at the time of its rendition, in preference to other general claims against the estates. The concluding proviso of § 119, above quoted, renders it plain that execution may issue upon a judgment after the death of the judgment debtor if the judgment be "a lien on any property" of the deceased judgment debtor, looking to the sale of such property in satisfaction of the judgment, independent of the administration of the estate of the deceased judgment debtor in a probate proceeding.

It is argued that the proviso of § 119 refers only to specific liens of such a nature as are foreclosable by a suit in equity, such as mortgages, mechanics' liens, etc.

This, we think, is not a correct view of this proviso. It is true the judgment lien upon real property of the judgment debtor, which comes into being upon the rendition of a judgment of a superior court, may not be specific in the sense that the judgment specifically describes the real property upon which it becomes a lien; but such lien is none the less a real, vital, existing lien upon all the real property of the judgment debtor situated in the county wherein the judgment is rendered. We are not here concerned with how it may become a lien upon the judgment debtor's real property situated elsewhere, or upon his personal property. Were it not for the sixth subdivision of § 171 it seems to us there could be no possible ground for the contention here made by counsel for the administratrix to rest upon. Indeed, she seems to rest her contention wholly upon the sixth subdivision of § 171, in arguing that it is therein in effect provided that a general lien upon the real estate ceases to be such upon the death of the judgment debtor, in so far as the priority of those claims mentioned in the five preceding classes enumerated in § 171 is concerned. This argument could, with as much reason, be directed against debts of the estate secured by a mortgage; for such debts, by this same subdivision 6 of § 171, are put in the same class as debts secured by judgment liens on real property; and manifestly it was never intended that the lien of a mortgage, as against property of a deceased person, should be impaired by the general provisions of § 171. It seems to us that the conclusion cannot be escaped that the provisions of § 171 of the probate code, specifying the order in which debts of an estate shall be paid, does not in the least impair the lien of a judgment upon real property of the deceased which became established prior to the death of the deceased, as provided by Rem. Comp. Stat., § 445.

Counsel for the administratrix seems to think that, because all the property of these estates is the real property here in question situated in Spokane county, as the record seems to show, this fact has some controlling force in our present inquiry; but this is a mere coincidence which we think cannot in the least impair Covell's judgment lien against the interests of the deceased in the real property situated in Spokane county. Plainly that lien cannot be affected by the amount, more or less, of the personal property of the estate, or the amount, more or less, of the real property of the estate situated elsewhere than in Spokane county, upon which Covell's judgment is not claimed to be a lien.

The decisions of other courts brought to our attention we find do not materially aid us here. Read superficially, they seem conflicting; but probably they are not so, read in the light of the different statutes discussed therein. The reasoning in our recent decision in *Hawley v. Isaacson*, 117 Wash. 197, 200 Pac. 1109, seems in harmony with the conclusion we here reach, though we do not cite that decision as being directly in point here.

Some contention is made in behalf of the administratrix that there can be no appeal from the disposition of this controversy made by the superior court or the judge thereof, seemingly rested upon the theory that, by the terms of the stipulation, it was only submitted to the superior judge as an arbiter whose decision was to become final, rather than to the superior court for official judicial determination. We cannot agree with this view of the submission of the controversy. We think the record plainly shows that it was submitted to the court as such, and that the judge was called upon to decide it the same as if it had been brought before the court by an action commenced by the administra-

trix looking to the setting aside of the sale made under the execution issued upon Covell's judgment. It seems quite plain to us that the judge's disposition of the controversy is appealable to this court.

Looking to the language of the judgment rendered by the superior court disposing of the controversy, entirely apart from the record upon which it is rendered, it seems hardly proper for us to reverse the judgment in terms; since it does correctly determine the priority and order of payment of the several classes of general claims established against the estate, putting Covell's judgment in the sixth class, as provided by § 171 of the probate code. In so far as it was so adjudged, viewing Covell's deficiency judgment claim merely as a general claim against the estate, the judgment is correct. But the judgment, read in the light of the record on which it was rendered, has the effect of denying the superiority of Covell's judgment as a lien on the real property of the estates situated in Spokane county, and also his right to have execution issued upon his judgment and sale made of the real property upon which it is a lien, independent of the probate proceedings. We think the court erred in declining to embody in its judgment appropriate language sustaining the sale made under the execution issued upon Covell's judgment, and in declining to confine its judgment, with reference to the order of payment of the debts of the estate, to property of the estate other than the real property in question and to the proceeds of the execution sale of the real property in question, in so far as there may be any surplus as the result of the execution sale over and above the amount necessary to satisfy Covell's judgment claim. The cause is remanded to the superior court with directions to correct its judgment accordingly.

We note that it appears in the record that there is an action pending—which we assume has not yet been

determined—commenced by Mr. Hackett during his lifetime against Covell, looking to the setting aside of Covell's judgment. It seems unfortunate that the question of the validity of that judgment, so drawn in question, was not finally determined before this controversy was determined, or determined in this controversy. But that was not done, and we therefore conclude that the question of the validity of Covell's judgment—which judgment is here conceded to be good in form and in so far as the record upon which it is rested is concerned—should not be foreclosed or deemed adjudicated by this proceeding. If the final prosecution of that action should result in a determination that the judgment upon which the execution was issued and the sale made are invalid, of course the sale would fall with the judgment, except as to possible innocent purchasers through mesne conveyances after the execution sale and the sheriff's deed issued in pursuance thereof. The superior court is also directed to so save this question from being *res judicata,* by appropriate language in its corrected judgment to be rendered as herein directed.

HOVEY, MACKINTOSH, HOLCOMB, and MAIN, JJ., concur.