[No. 27666.   Department Two.   December 21, 1939.]

THE PACIFIC NATIONAL BANK OF SEATTLE, *Plaintiff*, v.
BREMERTON BRIDGE COMPANY *et al., Respondents,*
KITSAP COUNTY, *Appellant.*[1]

[1]Reported in 97 P. (2d) 162.

*Ralph E. Purves*, for appellant.

*Hartman, Hartman, Simon & Coles*, for respondents.

STEINERT, J.—Plaintiff instituted this action in interpleader to have the court determine which of two claimants, named as defendants, was entitled to certain funds deposited by plaintiff in the registry of the court. Upon a trial before the court without a jury, findings were made and a judgment was entered awarding the funds to the defendant bridge company in preference to defendant Kitsap county, and discharging plaintiff from further liability. The defendant county has appealed.

Prior to March, 1938, Bremerton Bridge Company, a corporation, respondent herein, was the owner of certain real and personal property consisting of a bridge and its approaches, in Kitsap county. To secure its bonded indebtedness, amounting, in principal, to $185,000, respondent had executed a mortgage to plaintiff, Pacific National Bank, as trustee for the bondholders. The mortgage contained a provision to the effect that, if the property should be acquired by any public authority through eminent domain proceedings, the full consideration received therefor should be paid to the trustee, who was authorized to disburse such moneys by (1) discharging taxes, liens, or other charges having priority, (2) retiring the outstanding bonds, and (3) turning the remainder over to the respondent.

Taxes amounting to $6,963.38 were levied against the property by Kitsap county in 1937 and became a property lien as of March 1, 1938.

On March 2, 1938, the state of Washington instituted eminent domain proceedings in Kitsap county to have the property adjudged necessary for the public use and to have a jury determine the amount to be awarded for its acquisition by the state. The bridge company, the trustee bank, Kitsap county, and the city of Bremerton were named as defendants in the action

and were served with process. At the initial hearing, all the defendants appeared, and the court, having heard the evidence adduced, entered an order adjudicating a public use and directing that the cause be set for trial by jury on a specified date to determine the amount of compensation to be awarded to the parties interested therein. Upon his appearance at the hearing for adjudication of public use, the prosecuting attorney of Kitsap county consented to an order of default "in those proceedings" and "with respect to that order [of adjudication];" however, no formal written order of default against the county was ever signed or entered. Subsequent to the initial hearing, the county made no further appearance in the eminent domain proceedings.

At the trial of the cause upon the matter of compensation, the jury returned a verdict in favor of the bridge company and the trustee bank in the sum of $354,000, as the value of the property taken. Based on the verdict, a judgment and decree of appropriation was entered, the preamble of which recited:

"Kitsap County . . . having heretofore appeared and . . . disclaiming any interest, and not being represented at the hearing on the award . . ."

The definitive portion of the judgment contained the usual provisions appropriate to such proceedings and concluded as follows:

"FURTHER ORDERED, ADJUDGED AND DECREED that the court should and does retain jurisdiction of this action for the purpose of deciding any question which may arise touching the disbursement of the funds in the registry of the court."

The record does not disclose that a copy of the judgment and decree was ever served upon the prosecuting attorney, or that he was aware of its contents.

Three days later, respondent and the trustee bank,

through their attorneys, entered into a written stipulation, wherein it was agreed that the trustee was entitled to receive payment of the funds then in the registry of the court, and

"That upon receipt of said funds said . . . Bank shall hold the same subject to the terms of said Mortgage and Deed of Trust and shall make payment thereof as provided therein."

The stipulation also recited in its preamble that Kitsap county had appeared in the action and "disclaimed any interest."

Pursuant to the stipulation, the court on the same day entered an order of distribution containing the same recital and the same direction as those set forth in the stipulation. No appeal was taken from the order of distribution. However, the record does not disclose that the prosecuting attorney had any notice or knowledge of either the stipulation or the order.

The trustee received the amount of the award and, after paying the bondholders, had about eleven thousand dollars remaining in its possession. Kitsap county thereupon made demand upon the trustee for the amount of the unpaid taxes. Respondent demanded that the whole of the remaining funds be paid to it. Faced with these conflicting claims, the trustee instituted this action in King county and paid the money into the registry of the court. Later, upon stipulation of all parties to the action, a portion of the money was withdrawn and paid to respondent, but an amount sufficient to satisfy the county's claim was left in the registry.

Upon the trial of the present action, which was conducted in King county by a judge who had not participated in the eminent domain proceedings, the court made findings to the effect that, in the former proceedings, Kitsap county had consented to an order of

default, duly and regularly entered against it; that the order of disbursement entered in the eminent domain proceedings "adjudged" that the county had no interest in the award; that such order was *res judicata* as to any claim of the county to any portion of the amount awarded; and that, under the terms of the mortgage, the respondent was entitled to the full amount deposited in court. The assignments of error challenge the correctness and validity of these findings.

From our examination and consideration of the record, we have come to the conclusion that the prosecuting attorney did not consent to a default extending to, and covering, the entire scope and results of the eminent domain proceedings, prospective as well as present; and, particularly, that he did not consent to default with respect to the county's claim upon the ultimate award; on the contrary, we are of the view that his original announcement and consent were limited to the proceedings for adjudication of public use and for the determination of the amount of compensation to be awarded for the property taken. We are also convinced from the record that it was never intended by the prosecuting attorney, nor understood by opposing counsel or by the judge who presided at the hearings for adjudication of public use and for determination of the amount of compensation award, that the prosecuting attorney's verbal consent should relate to anything other than those proceedings, which were the only matters then before, or in contemplation of, the court. The county owned no part of the property sought to be taken; it was not concerned with the question whether or not the property should be appropriated to a public use; and it was a foregone conclusion at that time that the amount of the prospective award for the acquisition of the property by the state would be sufficient to satisfy the general taxes,

which were a prior and paramount lien. The fact that there were unpaid taxes had no bearing on the question of public use or the question of the value of the property, and could not have been a proper subject for consideration at that stage by either the court or the jury. For these reasons, we hold that the evidence in this case does not support the finding that an order of default, in the sense of a general, conclusive order, was entered against the county in the eminent domain proceedings.

■ It is even more apparent, we think, that the record does not support the finding that the order of disbursement in the eminent domain proceedings "adjudged" that the county had no interest in the award. It is true that the order recited that the county had theretofore appeared in the action and "disclaimed any interest," but it did not state that the county had disclaimed any interest *in the award.* It is significant that the same order directed the trustee bank to hold the money and make payment as directed in the mortgage, which, as already stated, provided for the payment of taxes.

Reading the order in its entirety and in the light of what had previously occurred, we do not believe that the court in the eminent domain proceedings intended, by that order, to adjudge that the county had disclaimed all interest in the taxes which were due it; nor do we believe that the order had any such legal effect. Moreover, the statute providing for the payment of claims out of awards in eminent domain proceedings does not contemplate that such claims shall be made or litigated until the money is paid into the registry of the court. Rem. Rev. Stat., § 898 [P. C. § 7668].

■ Passing to the question of *res judicata,* we are aware of the rule asserted by respondent, that

" 'A judgment of a court of competent jurisdiction, delivered upon the merits of a cause, is final and conclusive between the parties in a subsequent action upon the same cause, not only as to all matters actually litigated and determined in the former action, but also as to every ground of recovery or defense which might have been presented and determined therein.' " *Compton v. Seattle,* 38 Wash. 514, 524, 80 Pac. 757.

See, also, *Johnson v. Spokane,* 72 Wash. 298, 130 Pac. 341; *Currier v. Perry,* 181 Wash. 565, 44 P. (2d) 184; *Large v. Shively,* 194 Wash. 608, 79 P. (2d) 317, 82 P. (2d) 793; *Youngquist v. Thomas,* 196 Wash. 444, 83 P. (2d) 337, 87 P. (2d) 1120.

That rule, however, applies only when the particular parties concerned were adversaries in the action wherein the judgment was entered. *Snyder v. Marken,* 116 Wash. 270, 199 Pac. 302, 22 A. L. R. 1272; 1 Freeman on Judgments (5th ed.), 918, § 422; 2 Black on Judgments (2d ed.), 906, § 599; 15 R. C. L. 1013, § 487. Furthermore, the rule does not apply to matters which were only incidentally cognizable in the former action or which came in question collaterally. 2 Black on Judgments (2d ed.), 928, § 611.

In the eminent domain proceedings, the preliminary question was one upon which the respondent and the county were not adversaries. No dispute existed between them concerning the adjudication of public use or the amount of compensation to be awarded for the property. The matter of the disposition of the award was collateral to those issues. Although, undoubtedly, the county was a proper party to the action, and although our eminent domain statute contemplates that the rights of all parties may be adjudicated in such action, the rights are not all to be adjudicated at any one particular stage, but only at appropriate times.

The rights of the county did not become material in the case until and unless the award was paid

into court and the time ripe for its distribution. Since the order of default was, as we have hereinabove held, limited in its effect, the county was still a party to the general proceeding and was entitled to notice of distribution of the award. It did not receive notice, and consequently the order of distribution was not binding upon it and, therefore, was not *res judicata* as to the county's claim.

There is an added reason why the order of distribution should not be considered *res judicata*. This court has held that, where a judgment in eminent domain proceedings is for the full value of the land appropriated, and the amount is paid into court, the apportionment of the fund between rival claimants not only flows from the statute but is a matter of general equity without reference to the statute, and that it is immaterial whether or not the claimant was made a party to the original proceedings. *North Coast R. Co. v. Hess,* 56 Wash. 335, 105 Pac. 853; *State ex rel. Long v. Superior Court,* 80 Wash. 417, 141 Pac. 906. That principle is peculiarly applicable here.

Having decided that the order of disbursement was not *res judicata* of the county's claim, it becomes unnecessary to determine whether or not the county was, in legal effect, a beneficiary under the trust mortgage and, as such, entitled, in any event, to have the taxes paid out of the fund in court.

There is, however, another ground upon which our decision may be rested. Although the particular matter has not been suggested in the briefs, it is one that necessarily affects respondent's contention and should not be overlooked.

If the county is to be foreclosed of its right to have its taxes paid by reason of the disclaimer of interest made by the prosecuting attorney, it must be on the theory that such officer, even though he is not a taxing

official, has the power to release or commute taxes, regardless of whether his act effecting that result be intentional or unintentional.

Rem. Rev. Stat., §§ 11238, 11239 [P. C. §§ 6882-77, 6882-78], require the board of county commissioners of each county to levy taxes on all taxable property in the county and to certify to the county assessor the amount of taxes levied upon property in the county for county purposes. Rem. Rev. Stat., § 11220 [P. C. § 6882-68], provides, among other things, that

"Boards of county commissioners as such shall at no time have any authority to change the valuation of the property of any person or to release or commute in whole or in part the taxes due on the property of any person."

If the county commissioners, who are taxing officers, have no power to release or commute taxes, then, certainly, the prosecuting attorney, who is not such an officer, has no such power, and any attempt on his part to exercise such power would be ineffectual. Hence, any act by him which, though unintentional, would be equivalent to commuting the taxes, would likewise have no valid, legal effect. If the prosecuting attorney has no power to commute taxes, he has no power to disclaim any interest of the county therein.

The judgment is reversed as to the respondent Bremerton Bridge Company, with direction to the trial court to order payment of the county's claim for taxes out of the fund now in the registry of the court. As to the plaintiff, the judgment discharging it from further liability will stand affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.