[No. 31368.   Department One.   August 31, 1950.]

RALPH F. FIES *et al., Respondents,* v. EARL M. STOREY, *Defendant,* BILLIE STOREY, *Appellant.*[1]

[1]Reported in 221 P. (2d) 1031.

*J. Peter P. Healy,* for appellant.

*Merwin E. Casey,* for respondents.

BEALS, J.—The defendants, Earl M. Storey and Billie Storey, intermarried during the year 1941, the plaintiff Beatrice Fies being a sister of Earl Storey. August 20, 1948, an interlocutory order of divorce was entered by the superior court for Kittitas county in an action brought by Mr. Storey, seeking a divorce from his wife. The final decree of divorce was entered March 1, 1949. The parties had one infant son, whose custody was awarded to Mrs. Storey. The property belonging to the parties was divided between them, and an appropriate provision made for the support of the child.

October 14, 1948, the plaintiffs filed in the superior court for Pierce county their complaint in this action, demanding judgment against the defendants and each of them for the sum of four thousand dollars, with interest and attorney's fees, the action being based upon a promissory note, bearing date April 13, 1946, executed by defendant Earl M. Storey, whereby the maker promised to pay to plaintiffs' order, one year after date, the sum of four thousand dollars, with interest at the rate of two and one-half per cent per annum.

The defendant Billie Storey, by her answer, denied the execution of the note, affirmatively pleaded the entry of the interlocutory order and decree in the divorce action referred to above, and alleged that the plaintiffs in this action were witnesses upon the trial of the divorce case, and that the validity of the promissory note referred to in plaintiffs' complaint was presented in the divorce action and was decided against the plaintiff in that action, "thus finding in fact and in effect that the legality and sufficiency and effect of said promissory note was negative." Mrs. Storey prayed that the action be dismissed.

On plaintiffs' motion, the affirmative defense contained in Mrs. Storey's answer was stricken.

In the case at bar, defendant Earl M. Storey defaulted, and the action was tried to the court, resulting in the entry of findings of fact and conclusions of law in favor of the plaintiffs, followed by a judgment against each defendant individually in the sum of five thousand ninety-five dollars, which included an attorney's fee in the sum of seven hundred fifty dollars.

From this judgment, the defendant Billie Storey has appealed, presenting the following assignment of errors:

"(1) The trial court erred in striking the appellant's affirmative defense for the reason that the respondent's participation in the divorce case in which the promissory note was found ineffective constituted *res judicata*.

"(2) The trial court erred in allowing any attorney's fee beyond the statutory $10.00 on the language of the note.

"(3) The trial court erred in granting any judgment against appellant in any amount.

"(4) The trial court erred in refusing to sign Findings, Conclusions, and Judgment submitted by appellant."

At the date of the promissory note in question, the Storeys were purchasing, on contract, a house and lot in Seattle, referred to in the evidence as the "Boyer Avenue" property, approximately thirty-seven hundred dollars being still due on the contract of purchase. At the trial, respondents and defendant Earl M. Storey, called as a witness by respondents, testified that, on the date of the note, Earl Storey borrowed from respondents four thousand dollars, Mr. Storey then giving them the note in suit. Mr. Storey testified that approximately thirty-seven hundred dollars of the money borrowed from respondents was paid to the vendors of the real estate, being the balance due on the purchase price, and that a secondhand automobile was purchased with the balance; that, in June, 1946, the Boyer avenue property was sold, the purchaser paying twenty-five hundred dollars cash, the balance to be paid at the rate of seventy-five dollars a month; that, out of the cash payment, the expenses of the sale were paid, leaving $1,958, with which was purchased

war surplus material, Mr. Storey being engaged in the business of buying and selling such articles, mostly motor vehicles; that, after the sale of the property by the Storeys, they moved to different locations outside of Seattle, living together (save for one short period) until August 4, 1947, when they separated.

Mr. Storey then instituted an action for divorce, while residing at Ellensburg, the case having been tried in April, 1948. At the trial of the divorce action, the financial status of the Storeys was disclosed by the evidence, the respondents in the case at bar having testified. The superior court awarded the contract for the sale of the Boyer avenue property to Mrs. Storey. The note here in suit was called to the attention of the court, Mr. Storey testifying that he was indebted to respondents in the amount due on the note, and Mrs. Storey contended that the note was invalid, not having been signed and delivered on the day it bears date, but later, soon before the institution by Mr. Storey of the action for divorce. In connection with Mrs. Storey's contention that the note was signed long after the date it bears, the court submitted the original note to two handwriting experts. One, Mr. Luke S. May, reported that examination of the ink on the note failed to "disclose factors which warrant an opinion as to the age of the writing on the note." He stated that, apparently, the printed form upon which the note was written was somewhat worn prior to the time the writing was accomplished. Mr. May indicated no further opinion than as above stated.

Mr. Robert Gander, the other handwriting expert, stated in a written report that, in his opinion, after the writing (exclusive of the signature) was placed on the note, it was folded and became wrinkled and soiled, the signature having been added later. He also stated that it was his opinion that the signature was written with a different pen from that used in filling out the body of the note.

In her brief, appellant states that, in the divorce action, the superior court found the note invalid, and that the court

erred in the case at bar in striking appellant's affirmative defense.

The findings, conclusions, interlocutory order, and final decree of divorce entered by the superior court for Kittitas county were introduced in evidence in the case at bar. The preface to the findings entered by the trial court in that action recites the submission of the note to the handwriting experts, and also recites that the court had announced that it would award the Boyer avenue property and the amount due on the contract for the sale thereof to the defendant in the divorce action (appellant here), "without any charge against the same in favor of the payee of the note." The court then proceeded to enter its findings, describing the Boyer avenue property and other property belonging to the parties, and concluded that the contract for the sale of the Boyer avenue property and the unpaid installments due thereon should be awarded to Mrs. Storey, and that the plaintiff, Mr. Storey, should be required to pay all of the community obligations, with certain exceptions, and should also be awarded an unimproved tract in Seattle. The interlocutory order followed the findings, and was later confirmed by a decree of divorce, filed March 1, 1949.

The record in the divorce case nowise supports appellant's contention that the court adjudicated that the note here in question was invalid.

Testifying as a witness in the case at bar, appellant at first stated that her earliest knowledge of the fact that respondents had loaned money to her husband was when his complaint in the divorce action was served upon her, but that she thought the amount loaned was two thousand dollars. Later, referring to her endorsement of the check covering the down payment on the real estate (which was made payable both to her and her husband), she testified: "Well, when I found out that he had borrowed the money from Mr. and Mrs. Fies, I gave him the check to pay it back." On cross-examination, the following occurred:

"Q. Now, when did you give him the check? A. The same day we received it. Q. Is this the check from Mr. Wallace?

A. Yes. Q. In other words, this is about June of 1946? A. Yes. Q. Well, then, it is incorrect to say that you first heard about this loan when you received divorce papers in 1947 some time, is it not? A. Technically, yes."

She further stated, on redirect examination, that she had believed that the money they received as a down payment on the sale of the Boyer avenue property had been used to pay the indebtedness to respondents.

From the record, we are convinced that appellant had knowledge of the fact that respondents had loaned money to Mr. Storey.

■ Under the law, the husband is the manager of the community personal property. Rem. Rev. Stat., § 6892 [P.P.C. § 434-27]. There exists a strong presumption that a note signed by the husband alone or any indebtedness incurred by him is a community debt. *Proff v. Maley,* 14 Wn. (2d) 287, 128 P. (2d) 330.

■ The acid test to be applied in determining whether an obligation incurred by the husband is a community debt, is whether or not the transaction was intended to be for the benefit of the community. *Sun Life Assurance Co. v. Outler,* 172 Wash. 540, 20 P. (2d) 1110.

■ In the case at bar, the evidence shows that the money borrowed from respondents was used for community purposes in paying the indebtedness against the community real estate and in purchasing a car.

As appellant's affirmative pleading of *res judicata* was stricken by the superior court before the case at bar was called for trial, it should be determined whether or not any action by the superior court for Kittitas county in the divorce case, in connection with the promissory note in question, must be held binding upon the respondents in the case at bar. The matter of any indebtedness incurred by Mr. Storey in connection with a loan made to him by respondents, was only incidentally important in the divorce action.

In 2 Black on Judgments (2d ed.) 928, § 611, appears the following text:

"The rule has always been regarded as well settled, from the earliest authorities down to the present time, that the

judgment, either of a court of concurrent jurisdiction or of a court of exclusive jurisdiction, is not conclusive of any matter which was incidentally cognizable in that action, or which came collaterally in question, nor of any matter to be inferred by argument and construction from the judgment. 'The estoppel of a judgment extends only to the question directly involved in the issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon.' [ *Lewis' Appeal*, 67 Pa. 153.] 'The principle upon which judgments are held conclusive upon the parties, requires that the rule should apply only to that which was directly in issue, and not to everything which was incidentally brought into controversy during the litigation.' [*Horton v. Hamilton,* 20 Tex. 606.]''

In the case of *Dolby v. Fisher*, 1 Wn. (2d) 181, 95 P. (2d) 369, this court, after referring to the doctrine of *res judicata,* said:

"It is also the rule that issues which are not material to the controversy, although determined, do not become *res adjudicata, McGee v. Wineholt,* 23 Wash. 748, 63 Pac. 571; and that that only is deemed to have been adjudged in a former judgment which appears upon its face to have been adjudged, or which was actually and necessarily included therein, or necessary thereto. *State v. Roberts,* 151 Wash. 61, 275 Pac. 60."

In *Pacific Nat. Bank of Seattle v. Bremerton Bridge Co.,* 2 Wn. (2d) 52, 97 P. (2d) 162, we said:

"That rule [*res judicata*], however, applies only when the particular parties concerned were adversaries in the action wherein the judgment was entered. *Snyder v. Marken,* 116 Wash. 270, 199 Pac. 302, 22 A. L. R. 1272; 1 Freeman on Judgments (5th ed.), 918, § 422; 2 Black on Judgments (2d ed.), 906, § 599; 15 R. C. L. 1013, § 487. Furthermore, the rule does not apply to matters which were only incidentally cognizable in the former action or which came in question collaterally. 2 Black on Judgments (2d ed.), 928, § 611."

In the case of *Walsh v. Wolff,* 32 Wn. (2d) 285, 201 P. (2d) 215, appears the following:

"The doctrine of *res judicata* rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be

litigated again. It puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial proceedings. 30 Am. Jur. 911, Judgments, § 165.

"In *Northern Pac. R. Co. v. Snohomish County,* 101 Wash. 686, 172 Pac. 878, we approved the following rules:

" 'To make a judgment *res judicata* in a subsequent action there must be a concurrence of identity in four respects: (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made.' "

■ It is true, as argued by appellant, that a judgment rendered may be *res judicata* against a witness who testified in the action. Appellant cites authorities to this effect, but, in these authorities, the subject matter of the actions was identical and was the only matter contested in the proceedings.

Neither the interlocutory order nor the final decree in the divorce case purports to adjudicate in any way any question concerning the note here in suit, and no determination of that question was necessary in the divorce action.

■ Whether a wife knows of community indebtedness incurred by the husband during coverture is immaterial, if the indebtedness was actually incurred in connection with the business of the community. *Capital Nat. Bank of Olympia v. Johns,* 170 Wash. 250, 16 P. (2d) 452.

The matter of the making of the loan by respondents to Mr. Storey, the testimony of the parties, and the findings of fact, conclusions of law, interlocutory order, and decree entered in the divorce case were all before the trial court in the case at bar.

■ ·Appellant's counsel was sworn as a witness on her behalf. In the course of his direct examination, the witness, referring to the evidence introduced in the divorce trial concerning the note here in suit, testified:

"There was no testimony there about what the money was used for as there was in this case. The only purpose of the court in that case was to determine whether to award the unpaid balance of the land contract to the plaintiff or the defendant, so there were issues here not in that case, of course."

The evidence does not show any basis for appellant's contention that the record in the divorce case constitutes *res judicata* as against respondents here.

Appellant also assigns error upon the allowance of an attorney's fee in excess of the statutory amount. In this connection, the promissory note in question reads as follows:

" . . . And in case suit or action is instituted to collect this Note, or any portion thereof . . . *I, Earl M. Storey,* . . . promise and agree to pay in addition to the costs and disbursements provided by statute, . . . *all costs* . . . Dollars in like lawful money, for Attorney's fees in said suit or action." (Italicized words appear in handwriting.)

The trial court granted respondents judgment for seven hundred fifty dollars by way of attorney's fees. Appellant contends that the language of the note does not amount to an agreement to pay an attorney's fee in excess of that provided for by statute.

In the case of *Scandinavian American Bank v. Long,* 75 Wash. 270, 134 Pac. 913, an action based upon a promissory note containing language similar to that above quoted from the note here in suit, a line had been drawn with a pen along the blank space left for the amount of "Dollars" which the note provided should be paid in case of suit. This court held that the drawing of this line clearly indicated that no attorney's fee was to be allowed, and the judgment of the trial court allowing such a fee was held erroneous in that respect.

In *Hawley v. Isaacson,* 117 Wash. 197, 200 Pac. 1109, 21 A. L. R. 268, an action brought upon several promissory notes which were on printed forms, similar in effect to that in the action at bar, the line following the word "statute" was left entirely blank. The trial court allowed a reasonable attorney's fee to the plaintiff, and, on appeal, the defendant assigned this ruling as error. After quoting from the case of *Scandinavian American Bank v. Long, supra,* this court held that the note in the case at bar provided for a reasonable attorney's fee, and affirmed the ruling of the trial court,

citing 8 C. J. 1098, and *Strough v. Gear,* 48 Ind. 100.   In the course of the opinion, this court said:

"In this case, if the maker of the note intended..that he would not be liable for any attorney's fee in the event of suit, he should have stricken that provision.  By the express words of the note the maker agreed to pay an attorney's fee. The only thing lacking is the amount to be paid.  It must be held that the maker agreed to pay a reasonable amount as attorney's fee, and that that amount was properly fixed by the court."

In the case before us, the words "all costs" were written with a pen on the line following the words "costs and disbursements provided by statute," and immediately preceding the word "Dollars."  The words added, then, do not refer to statutory costs and can only mean that the maker agreed to pay an attorney's fee other than the statutory allowance.  Certainly, if the maker of a note is held to have made such a promise when the line is left blank, the addition of the words "all costs" could not reduce his liability.

Appellant cites our decision in *State ex rel. Macri v. Bremerton,* 8 Wn. (2d) 93, 111 P. (2d) 612, in which it was held that no attorney's fee, other than that provided for by statute, should be allowed to a relator in a mandamus proceeding tried to the court.  The court held that an application "for a writ of mandate is but another form of civil action," and that costs by way of an attorney's fee "which may be allowed to a successful litigant in a civil action are limited to ten dollars in all actions where judgment is rendered without a jury."

The trial court did not err in allowing respondents an attorney's fee of seven hundred fifty dollars, that amount being reasonable in view of all the circumstances connected with the action.

Appellant's third and fourth assignments of error are without merit.

The judgment appealed from is affirmed.

SIMPSON, C. J., GRADY, and DONWORTH, JJ., concur.

SCHWELLENBACH, J. (dissenting in part)—I cannot agree with the majority that by writing the words "all costs" in the space in the note reserved for the *amount* of attorney's fees, the maker thereby promised to pay a reasonable attorney's fee. At most it indicates an intention not to pay a fee. It was clearly not a promise to pay a fee. It seems to me the majority is making a contract for the parties, into which they did not enter.

---

November 2, 1950. Petition for rehearing denied.

