THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee,
v. 632 SQUARE METERS OF LAND, ETC., ET AL., Defendants.
SUCESIÓN VICENTE, Codefendant and Appellant.

No. 10676.   Argued April 7, 1953.—Decided May 19, 1953.

*Eduardo Urrutia Martorell* for appellant. *Luis E. Dubón, R. García Cintrón, F. Fornaris, Jr., Jaime Pieras, Jr.,* and *Luis Ríos Algarín* for codefendant.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

On December 30, 1948 the People of Puerto Rico filed a complaint in the former Condemnation Court to condemn a certain tract of land consisting of 632 sq. meters. The People filed with the complaint a declaration of taking which vested title to the land in the government and deposited with the Secretary of the court the sum of $8,848.00 as its estimate of just compensation for the land. The complaint recites that the *Compañía de los Ferrocarriles de Puerto Rico* and the members of the *Sucesiones* of Avelino Vicente González and Ana Segunda Aguayo Hernández were included as defendants for the reason that, according to the information and

belief of the plaintiff, the Company was the owner and the members of the *Sucesiones* were the persons who, as owners of some interest therein, might claim compensation for the said land.

Exhibit I, attached to and forming part of the complaint, first describes the condemned tract of 632 sq. meters. It then recites that the said 632 sq. meter tract is being segregated from a larger tract of 1125 sq. meters parallel to the railroad track. The latter parcel, according to Exhibit I, "was acquired by the *Compañía de los Ferrocarriles de Puerto Rico*, as per Deed of Cession of Land and Concession, No. 594, executed by don Avelino Vicente y González before Notary don Mauricio Guerra-Mondragón y Mejías, on August 31, 1897, which has not been inscribed in the Registry of Property." Exhibit I adds that the 1125 sq. meter tract had in turn been segregated from an 89 cuerda tract, known as farm No. 1618, inscribed at folio 87 of Book No. 39 of the Capital, first inscription, of May 21, 1897, in favor of don Avelino Vicente y González, married to doña Ana Segunda Aguayo y Hernández. A description is then given in Exhibit I of the 89 cuerda tract from which the 1125 sq. meter tract was segregated.

The defendants were properly served, but the members of the *Sucesiones* did not file appearances or answers and their defaults were entered.[1] On March 7, 1949, the People and the Company filed a stipulation reciting that "in the said complaint the members of the *Sucesiones* of don Avelino Vicente González and doña Ana Segunda Aguayo Hernández were made defendants because the principal farm from which the condemned parcel is being segregated is inscribed in their name in the Registry of Property, although the truth is that the said parcel had been acquired by and belongs in fee to the *Compañía de los Ferrocarriles de Puerto Rico*." The stip-

---

[1] There is nothing in the record before us to show entry of the defaults. However, the judgment of the lower court recites that the defaults had been entered and the appellant does not challenge that statement here.

ulation went on to say that the plaintiff and the Company
had agreed that the fair and reasonable value of the con-
demned tract was $11,376.00 and had consented to entry of
judgment on that basis; that the Company waived interest
on the excess over the original deposit, $2,528.00; and that
the parties waived their right of appeal.

On the next day, March 8, 1949, the former Condemna-
tion Court entered judgment as provided in the stipulation.
On March 15, 1949 the Company filed a motion requesting
delivery to it of the $11,376.00. The next day the trial court
entered an order to that effect. The members of the *Suce-
siones* were never notified of (1) the stipulation between the
People and the Company, (2) the order of the court approv-
ing the stipulation, (3) the motion of the Company for
delivery to it of the $11,376.00 or (4) the order directing
delivery of the money to the Company.[2]

On April 3, 1950—one year and twenty-six days after the
judgment entered by the former Condemnation Court—the
members of the *Sucesión* of Avelino Vicente filed a motion in
the condemnation proceeding praying that the judgment of
March 8, 1949 be set aside. They alleged that the *Sucesión*
was the only owner of the condemned parcel and that the
Company had no right, title or interest therein. According
to the *Sucesión*, under a deed of August 31, 1897, Avelino Vi-
cente ceded 1305 sq. meters to the Company for use as a rail-
way station, with a provision that the said tract would revert
to Vicente if the Company ceased to use it as a railway sta-
tion; that "a long time before these condemnation proceedings
were begun, the Railroad Company of Puerto Rico had

---

[2] There is a notation at the foot of the judgment approving the stipu-
lation, made by the Secretary of the court, to the effect that "The parties
were notified with copies March 9, 1949." But we take this to mean that
only the People and the Company were notified of the judgment, as the
uncontradicted testimony at the hearing on the motion to set aside the
judgment was to the effect that the members of the *Sucesiones* were never
notified of any document except the complaint.

abandoned the use and service of the said railway station, eliminating from its itinerary all stops at the said place"; and that title to the said tract had therefore reverted to the *Sucesión* of Avelino Vicente.

The motion of the *Sucesión* went on to allege that the Company, knowing that it had no right, title or interest in the said tract, by "inadvertence, error or malice" appeared before the court alleging that it had such a right and by means of the foregoing stipulation "confused" the former Condemnation Court and obtained an order for delivery of the $11,376.00 which belonged exclusively to the *Sucesión*.

The *Sucesión* alleged that it was not interested in altering the amount awarded for the land and that it appeared only to ask that the proceedings be opened to enter a new judgment fixing the same amount as the value of the land and ordering the Company to return the $11,376.00 to the former Condemnation Court so that the court might determine who was entitled to payment thereof. The motion recites that the following documents are attached thereto: (1) copy of deed No. 594 of August 31, 1897 executed by Avelino Vicente in favor of the Company; (2) certificate of the Registrar of Property of the first inscription of farm No. 2153 showing title in favor of Avelino Vicente as well as the "conditional cession" in the said deed as to the railway station; (3) certificate of the marginal note made by the Registrar on the margin of said first inscription, dated November 28, 1947, "showing the cancellation of the cession made to the *Compañía de Ferrocarriles de Puerto Rico* for the railway station in question." [3]

In their motion to set aside the judgment of the former Condemnation Court, the members of the *Sucesión* Vicente invoked Rules 55(c) and 60(b) of the Rules of Civil Pro-

[3] These documents are not attached to the motion in the record before us; but they were introduced in evidence at the hearing on the motion to set aside the judgment, and appear in the transcript of the evidence.

cedure. They alleged that they had all relied on Manuel Vicente Aguayo, one of the members of the *Sucesión*, to handle its affairs; that when he was notified of the complaint he was ill and under medical attention for two months; that under these circumstances he did not know which tract of land was involved in the condemnation proceeding; and that as a result a default judgment was entered against the members of the *Sucesión*.

On April 27, 1950 the former Condemnation Court held a hearing on the motion of the *Sucesión* to set aside its judgment of March 8, 1949. On the same date the Company filed a motion praying that the motion of the *Sucesión* be dismissed outright because it had been filed more than six months after the entry of the judgment. In support of its motion, the Company cited Rule 60(*b*) and *Great Am. Ins. Co.* v. *District Court*, 67 P.R.R. 529, and *Alcázar* v. *District Court*, 67 P.R.R. 680. Counsel for the People and for the Company appeared at the hearing held on April 27, but counsel for the *Sucesión* did not appear. On April 28, 1950, the former Condemnation Court denied the motion of the *Sucesión* to set aside the judgment on the ground that it was untimely. It held that under Rule 60(*b*) such a motion must be filed within six months of entry of the judgment.

Thereafter, the former Condemnation Court granted the motion of the *Sucesión* to set aside the order of April 28, 1950 because the *Sucesión* was never notified of the hearing on its motion to set aside the judgment. The *Sucesión* filed an amended motion to set aside the judgment alleging fraud on the part of the People and the Company and a hearing was held thereon at which oral and documentary testimony was adduced. Once more the trial court entered an order denying the motion to set aside the judgment. It again relied on Rule 60(*b*) and *Great Am. Ins. Co.* v. *District Court, supra*, and *Alcázar* v. *District Court, supra*. It stated that it had

not been demonstrated "that the judgment in question is null on its face". The case is here on appeal by the *Sucesión* from the order denying its motion to set aside the judgment.

■ If this were an ordinary law suit, we would unhesitatingly affirm the order of the trial court. The testimony shows that through their own inadvertence and neglect the members of the *Sucesión* failed to file an appearance or an answer and that as a result a default was entered against them. The People thereafter entered into the stipulation with the Company and the judgment based thereon was entered.[4] We do not stop to examine the question of whether under these facts a motion to set aside the judgment would lie under Rule 60 (b). Such a motion must be filed within 6 months after judgment. Here the motion was not made until 13 months after judgment. It was therefore filed too late for relief under Rule 60 (b). As a consequence, we would not disturb the decision of the trial court if this case were governed by Rule 60 (b) and were an ordinary law suit. *Great Am. Ins. Co.* v. *District Court, supra; Alcázar* v. *District Court, supra.*

■ However, we cannot dispose of this case in such a perfunctory fashion precisely because a condemnation proceeding is not an ordinary law suit. On the contrary, there are a number of notable differences between it and an ordi-

---

[4] The attorney for the People was quite conscientious in this entire matter. As hereinafter noted, the government has no interest in the distribution of the compensation, provided it makes a reasonable effort to join all the defendants who may have an interest in the property. Nevertheless, counsel for the government, although not obliged to do so, made inquiries of a lawyer who is a daughter of one of the members of the *Sucesión* and was advised by her, after she consulted her father, that the *Sucesión* had no interest in the case and did not intend to appear therein. Accordingly, the default of the *Sucesión* was entered and the government signed the stipulation awarding the entire compensation to the Company. As we shall see, the *Sucesión* prevails here on a theory which has no relation to Rule 60 (b). But there is not an iota of testimony to support its charge of fraud on the part of the government and the Company. It ill becomes counsel for the *Sucesión* to make such charges without any basis in fact. See *Cordero* v. *Rivera, ante,* p. 548.

nary suit. The right of the government to condemn private property for public use "is an inherent and necessary attribute of sovereignty . . . and is superior to all other property rights." *P. R. Housing Authority* v. *District Court*, 68 P.R.R. 50, 55; *McCormick* v. *Marrero, Judge*, 64 P.R.R. 250; *Porto Rico Tel. Co.* v. *Puerto Rico Commun. Authority*, 189 F. 2d 39 (C.A. 1, 1951); *People of Puerto Rico* v. *Eastern Sugar Associates*, 156 F. 2d 316 (C.A. 1, 1946). A condemnation suit is a proceeding *in rem*. It is directed not against particular defendants, but against the property itself.[5] Although the exercise of the power of eminent domain extinguishes all previous rights in the property, the government does not condemn the interest therein of a particular defendant. The title acquired by condemnation is not derived from the title of the former owner, but is a new, independent and absolute title. *P. R. Aqueduct Service* v. *Registrar*, 70 P.R.R. 216; *Duckett & Co.* v. *United States*, 266 U. S. 149, 151. Title vests in the government as soon as a declaration of taking is filed and a deposit is made in court of the amount estimated as compensation; under those circumstances, the government obtains title by virtue of a declaration of taking, not by an order of court based on the declaration of taking. *People* v. *Registrar*, 70 P.R.R. 243, 246; *P. R. Housing Authority* v. *District Court, supra,* p. 60; *Porto Rico Tel. Co.* v. *Puerto Rico Commun. Authority, supra.* Provided the government makes a reasonable effort to join as defendants all persons who may have an interest in the condemned property, the government has no interest as such in the distribu-

---

[5] It is for this reason that the assertion has been made that a condemnation proceeding cannot fail for non-joinder of parties defendants. Manual on Federal Eminent Domain 364 *et seq.*; 4 Stan. L. Rev. 266, 269.

The Manual on Federal Eminent Domain, which is a valuable and detailed study of all phases of condemnation, was published in 1940 by the Federal Department of Justice. Although it is not available to the general public, we have been able to examine it through the courtesy of the United States Attorney for Puerto Rico.

tion of the compensation paid to the various claimants.[6] The intervention of the government is confined to two questions: (1) obtaining title to the property in the name of the government; (2) ascertainment of the total amount it must pay into court for the property.[7] *United States* v. *Adamant Co.*, 197 F. 2d 1, 4–5 (C. A. 9, 1952); Clark, *The Proposed Condemnation Rule*, 10 Ohio State L.J. 1, 2–3.[8] A "judgment" based on a declaration of taking reciting that title is vested in the government is not appealable; a right of appeal exists in a condemnation case only when a final judgment disposing of the cause in its entirety has been rendered, including adjudication of the amount of compensation and the persons entitled thereto. *P. R. Housing Authority* v. *District Court, supra,* 61; *Catlin* v. *United States,* 324 U. S. 229.

The state courts in continental United States have recognized the unique nature of a condemnation proceeding. The differences which we have noted between it and ordi-

---

[6] Failure to join as a defendant a person who appears to have an interest in the property might have grave consequences for the government. "Failure to give to a person named as a party the notice required by Constitution and statute does not affect the jurisdiction of the court to transfer title to the United States, but it does mean that the court has acquired no jurisdiction over the person not notified, and that he is consequently not bound by the assessment of damages and might relitigate that issue." Manual on Federal Eminent Domain, p. 466.

[7] As we pointed out in *People* v. *Franceschi*, 72 P.R.R. 517, 523, footnote 3, "in many cases, even where the parties have agreed as to price, a friendly condemnation suit is filed to give the People immediate possession and a clear title." See *Danforth* v. *United States*, 308 U. S. 271; Manual on Federal Eminent Domain, pp. 286–88.

[8] It is interesting to find Judge Clark—who is familiar with the Puerto Rican scene, *e.g.*, Clark, *The New Judiciary Act of Puerto Rico: A Definitive Court Reorganization,* 61 Yale L.J. 1148—utilizing the experience gained in Federal condemnation cases in Puerto Rico to illustrate the need for a special rule of procedure for such cases in the Federal courts. See footnotes 11 and 12. The fact that in the process Judge Clark quotes what Mr. Justice Holmes used to call "prime authority" does not detract from its value. In Clark, *The Proposed Condemnation Rule,* 10 Ohio State L.J. 1, 4, footnote 10, reads as follows:

nary cases have been either the express ground or at least the inarticulate major premise for the holdings by the majority of the courts, with which we agree, that although an answer or other appropriate pleading is required to contest the validity of the taking, an answer is not required—indeed, in some states is not even permitted—on the question of compensation to particular defendants. And if no answer is required as to compensation, it follows that there can be no default against a defendant on that issue. *Caruthersville School Dist. No. 18* v. *Latshaw*, 233 S.W. 2d 6, 11, 12 (Mo., 1950); *Board of Education* v. *City of Chicago,* 83 N.E. 2d 714, 718–719 (Ill., 1949); *Lamasco Realty Co.* v. *City of Milwaukee*, 8 N.W. 2d 372, 387–88 (Wisc., 1943); *United States* v. *Nudelman*, 104 F. 2d 549, 551 (C.A. 7, 1939); *Department of Public Works and Buildings* v. *Lewis*, 176 N.E. 345 (Ill., 1931); *Missouri Power & Light Co.* v. *Creed*, 32 S. W. 2d 783 (Mo., 1930); *In re* Rogers, 220 N. W. 808 (Mich., 1928); *Burgess* v. *Bremer County*, 178 N. W. 389 (Iowa, 1920); *State* v. *Superior Court*, 182 P. 962 (Wash.,

---

. "The practical problems facing the Government attorneys are strikingly stated in the following extract from the Report of United States Attorney Snyder—now Mr. Justice Snyder of the Supreme Court of Puerto Rico—to Attorney General Biddle, Jan. 15, 1942: 'The impact of the defense emergency has been felt most forcibly in our condemnation work. The United States had never filed a condemnation case in Puerto Rico prior to 1939. Six days after Germany invaded Poland in September, 1939, we filed our first case against 1877 acres of land on our northwestern coast on which today stands the famous Borinquen Air Base which has already earned the title of watchdog of the Caribbean. Twenty-four hours after we received this first request to condemn, we had obtained title to and put the Army in physical possession of this land. But handling the resulting claims was a different matter. The local procedure is complicated, hundreds of problems of law and fact were involved, and the case has required months of work by several lawyers. . . . There were 276 parcels in this tract, with 344 defendants named as having an interest. Sugar cane, palm, coconut, fruit, and urban lands were involved. Indeed, a supplementary case included an entire village. Schools, churches, roads, agricultural experiments, irrigation ditches, and power lines were all encompassed within this case,' and similarly in the 49 additional cases, involving more than 15,000 acres of land in the island, filed by the time of the report."

1919). See *United States* v. *Certain Parcels of Land, Etc.*, 345 U. S. 344; Note, 9 American and English Cases Annotated 476.

The foregoing rule is laid down in 2 Nichols on *Eminent Domain*, 2d Edition, pp. 1080–1081 as follows:

"It appears to be the rule in most jurisdictions in which condemnation is effected by judicial proceedings, that after the owner of the land sought to be taken has been made a party respondent and duly served with process, he is not obliged or even permitted to file any answer or other pleading in order to entitle him to be heard, at any rate upon the question of damages. . . .

"In some jurisdictions, while the owner does not forfeit his right to be heard upon the question of damages by failing to file an answer, it is thought to be the better practice, if not absolutely necessary, for the respondent to set up by answer any objections to the validity of the attempted taking not appearing on the face of the petition."

We find the same doctrine stated in Manual on Federal Eminent Domain at p. 527 as follows: "The states which require an answer, generally speaking, do so to insure that certain issues, *e. g.*, the right to condemn, shall be questioned, if at all, in the beginning; and a 'default', generally speaking, means no more than that the condemnee, having failed to raise certain issues at the proper time, is barred from raising them thereafter. He is not thereby barred from participating in the award."

On the specific question of whether a judgment by default may be obtained in a condemnation case, in *Concord Improvement Co.* v. *Reichelderfer*, 65 F. 2d 189, 190 (C.A., D.C., 1933), the court held that on the issue of compensation "there is no such thing as judgment by default . . ." It pointed out that "the usual practice requires no plea or answer on the part of a defendant . . . .". It stated that the "reason why there is no strict necessity that the owner should appear and answer is that the land can be condemned only on the payment of just compensation to the owner, and

this, of course, must be ascertained and paid whether or not the owner appears and answers." Inasmuch as a defendant whose interest in a condemned property is shown by the pleadings is not in default on the question of compensation because of his failure to appear or answer, awards made to others without notice to such a defendant have been set aside on motion of the latter, without reference to the six-month limitation of Rule 60(b). *United States* v. *247 Acres of Land, Etc.*, 104 F. Supp. 938 (Dist. Ct., Pa., 1952); *United States* v. *Certain Lands, Etc.*, 82 F. Supp. 432 (Dist. Ct., N.Y., 1946). See *Pacific Nat. Bank of Seattle* v. *Bremerton Bridge Co.*, 97 P. 2d 162 (Wash., 1939); Manual on Federal Eminent Domain 937.

Our view that a defendant in a condemnation case is not in default on the question of compensation because he fails to appear or to answer the complaint is reinforced by the terms of Rule 55(a) of the Rules of Civil Procedure. Under the latter a default is entered when a defendant has not filed an answer if he is a party "against whom a judgment for affirmative relief" is sought.[9] But the government does not seek *affirmative relief* against a former owner on the question of who is entitled to the compensation for the condemned property. On the contrary, as we have seen, the government has no interest in the distribution of the compensation. It is therefore clear that the government was not entitled to entry of a default against the *Sucesión* on the question of whether the latter was entitled to any compensation. See *Default Judgments in Excess of Prayer*, 4 Stan. L. Rev. 278.[10]

---

[9] Rule 55(a) reads as follows: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default."

[10] The fact that the government plays no role on the question of the proper recipient of the compensation is borne out by what has occurred here. The *Sucesión* is not objecting to the validity of the taking. And it is making no effort to obtain any money from the government or to increase the amount of the deposited money as stipulated by the People and the Company. The *Sucesión* asks only (1) that the Company be

910

■ We have not overlooked the fact that where A and B are both possible claimants of the deposited money, A might seek a default against B as its co-defendant (converted, as we shall see, into co-plaintiff on the question of compensation) on the theory that, as between them, A was entitled to the whole amount. We assume, without deciding, that such a request could be made when coupled with the proper notice to B. But here there is nothing in the record which shows such a specific request by the Company as against the *Sucesión*. On the contrary, there was apparently a routine entry of default by the Secretary of the court predicated on the failure of the *Sucesión* to answer the complaint of the *People*. See footnote 1. Under these circumstances the Company can scarcely claim the benefits of an alleged default in connection with the dispute between it and the *Sucesión* as claimants of the deposited money.

■ In an ordinary civil case the rule in this jurisdiction is that a defendant against whom a default has been entered is not permitted to introduce evidence of his own at a hearing at which the testimony of the plaintiff is taken. *Rivera v. Goytía*, 70 P.R.R. 29. A similar rule does not prevail in condemnation cases. That is to say, as we have seen, a defendant in a condemnation proceeding who has not appeared or answered is not thereby barred from presenting testimony at a hearing on the question of compensation. This is another facet of the proposition that the ordinary rule as to default does not obtain in condemnation cases on the issues of the persons who are entitled to compensation for the condemned property and the amounts they should be paid.

---

ordered to return to the Secretary of the court the $11,376.00 paid to the Company; and (2) that, after a hearing on the merits, the same $11,376.00 be awarded to the *Sucesión*. The People has not filed a brief or appeared in any way in this appeal.

If the Company were insolvent and the *Sucesión* were endeavouring to obtain a new deposit of $11,376.00 from the government or if the *Sucesión* were insisting that it was entitled to a sum larger than $11,376.00 we might possibly have a different question. See footnote 15. But that problem does not arise under the facts of this case.

██ We are aware that when the question in a condemnation case is the amount of compensation, the cases hold that (1) the defendant is in effect the plaintiff; (2) he must present his evidence first; and (3) he has the burden of proof as to value. *People* v. *García*, 66 P.R.R. 478; *U. S. ex rel. T.V.A.* v. *Powelson*, 319 U. S. 266, 273–74; Dolan, *Court Practice in Condemnation Suits*, 31 Va. L. Rev. 9, 17. But these cases do not impair the conclusion that a defendant is not in default, insofar as compensation is concerned, because he fails to answer the complaint. Consequently, despite the lack of an answer, a defendant is entitled to notice of a hearing or contemplated action relating to disposition of the deposited money. If he does not appear although so notified, perhaps the parties have discharged their obligation to him. On the other hand, if he does appear, he would simply be the "plaintiff" and be required to present his testimony first and have the burden of proof as to value. *Cf. Canino* v. *Court of Eminent Domain*, 70 P.R.R. 141, holding that even though a former owner was thus converted into the plaintiff, the government was not entitled to a more definite statement after the former owner had alleged in a general way in his answer that the value of the property was greater than the amount deposited.

The Federal procedure seems substantially in accord with our views. Prior to 1951, Federal condemnation suits were conducted under the Conformity Act, 36 Stat. 1167, 40 U.S.C. § 258. In 1951 Rule 71A of the Federal Rules of Civil Procedure went into effect. Rule 71A (*d*) (2) provides for an answer within 20 days if the defendant wishes to object to the taking of his property. Rule 71A (*e*) provides that even if a defendant has no objection to the taking, he may enter an appearance. However, Rule 71A (*e*) goes on to provide, with reference to a defendant, that "at the trial of the issue of just compensation, whether or not he has previously appeared or answered, he may present evidence as to the amount of compensation to be paid for his property, and he may share

in the distribution of the award." As Rule 71A(e) gives a former owner the right to be heard on the amount of compensation to be awarded to him, whether or not he has appeared or answered, it seems reasonable to believe that under the Federal rule a defendant who as here appears from the pleadings to have a possible substantial interest in the condemned property must be notified of any stipulation for disposition of the compensation and of a judgment based on the stipulation or else the judgment will be void. See Clark, *supra;* Comment, 4 Stan. L. Rev. 266, 272–3; Comment, 10 Ohio State L. J. 65, 71. See also 3 Moore's Federal Practice, 1st. ed., 1951 Supp., pp. 204–33.[11]

Our Legislature was aware of the special nature of condemnation proceedings. It did not, as the Company seems to believe, provide without qualification that the Rules of Civil Procedure, including the provisions for default, shall apply in condemnation cases. Rather in the Act creating the Condemnation Court, Act No. 223, Laws of Puerto Rico, 1948, as amended by Act No. 178, Laws of Puerto Rico, 1949, it provided in § 3 that "The Rules of Civil Procedure

---

[11] Federal Rule 71A(d), after providing in the first paragraph for notices to the defendants, states that "the defendant may serve upon the plaintiff's attorney an answer within 20 days after service of the notice, and that the failure so to serve an answer constitutes a consent to the taking and to the authority of the court to proceed to hear the action and to fix the compensation."

Rule 71A(e) reads as follows: *"Appearance or Answer.*—If a defendant has no objection or defense to the taking of his property, he may serve a notice of appearance designating the property in which he claims to be interested. Thereafter he shall receive notice of all proceedings affecting it. If a defendant has any objection or defense to the taking of his property, he shall serve his answer within 20 days after the service of notice upon him. The answer shall identify the property in which he claims to have an interest, state the nature and extent of the interest claimed, and state all his objections and defenses to the taking of his property. A defendant waives all defenses and objections not so presented, but at the trial of the issue of just compensation, whether or not he has previously appeared or answered, he may present evidence as to the amount of the compensation to be paid for his property, and he may share in the distribution of the award. No other pleading or motion asserting any additional defense or objection shall be allowed."

shall be applicable to condemnation proceedings, *with the exception of such provisions of the rules as are clearly inconsistent with the General Law of Eminent Domain.*" (Italics ours.) And, as we have seen from the foregoing discussion, it would be clearly inconsistent with the provisions, purpose and spirit of our eminent domain statute—Act of March 12, 1903, as amended, particularly as amended by Act No. 2, Laws of Puerto Rico, 1941, Act No. 22, Laws of Puerto Rico, 1942, Act No. 19, Laws of Puerto Rico, Second and Third Special Sessions, 1942, and Act No. 216, Laws of Puerto Rico, 1946—for us to hold that a defendant who on the face of the pleadings has a possible substantial interest in the condemned property shall be considered in default on the question of compensation by virtue of his failure to file an answer. Although Federal Rule 71A spells out this principle in more detail, our approach as a result of the reasons set forth in this opinion coincides with the Federal rule in this respect. See *Joint County Park Board, Etc.* v. *Stegemoller*, 88 N. E. 2d 686 (Ind., 1949).[12]

It remains only to note that our view of § 3 of Act No. 223 as amended by Act No. 178 is not changed by the terms of § 6 of the same Act.[13] Section 6 merely undertakes to fix the time limit within which an answer must be filed, irrespective of the place of service. It does not mean that if no answer is filed by a defendant with an interest similar

---

[12] Federal Rule 71A (*a*) provides that "The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain, *except as otherwise provided in this rule.*" (Italics ours.) See Clark, *The Proposed Condemnation Rule,* 10 Ohio State L. J. 1, 13–14. As we have seen, paragraphs (*d*) and (*e*) of Rule 71A in effect "provide otherwise" as to default on the question of compensation against a defendant who fails to answer.

[13] Section 6 of Act No. 223 of 1948, as amended by Act No. 178 of 1949, reads in part as follows: "In all condemnation actions or proceedings, independently of the place the summon is served, the defendant shall answer the complaint within the term of twenty (20) days counting from the date notice thereof is served, except in such cases where the defendant has been summoned by edict."

to that of the *Sucesión*, the defendant is in default and is barred from sharing in the compensation. We reach this result by implication in view of the peculiar nature of a condemnation proceedings; the Federal doctrine is the same because of the explicit provisions of a rule of procedure tailored specifically for condemnation suits. A special rule of procedure for condemnation cases, analogous to Federal Rule 71A, should perhaps be adopted when our Rules of Civil Procedure are revised. But we believe that Act No. 223 as amended by Act No. 178, our condemnation statutes, and the nature of a condemnation proceeding require us to hold that in such a proceeding a default cannot be entered on the question of compensation against a defendant who is shown by the pleadings to have a possible substantial interest in the condemned property because he fails to appear or to answer the complaint.[14]

Once we decide that the *Sucesión* was not in default for purposes of compensation because of its failure to appear or to answer the complaint, the conclusion is irresistible that the government and the Company could not enter into a stipulation disposing of the entire deposit without notice to the *Sucesión*. Nor could the trial court without notice to the *Sucesión* validly enter a judgment based on such a stipulation. Because of the failure of the parties and the court to serve such notices, the judgment of March 8, 1949 was void and subject to collateral attack without reference to the six-months limitation of Rule 60(b). *United States* v. *247 Acres of Land, Etc.*, 104 F. Supp. 938 (Dist. Ct., Pa., 1952); *United States* v. *Certain Lands, Etc.*, 82 F. Supp. 432 (Dist. Ct., N. Y., 1946).

---

[14] It need hardly be added that, just as in the Federal rule, a defendant who fails to answer the complaint after he is notified thereof, cannot thereafter object to the validity of the taking. For that purpose, he is considered in default. Here, as already noted, the *Sucesión* does not object to the validity of the taking. It asks only for compensation. See footnote 10.

In *Alcázar* v. *District Court, supra,* we held that a motion of the type filed herein, in view of the terms of Rule 60(*b*), if "filed after the expiration of six months, should be peremptorily denied, *unless it is shown that the judgment in question is void on its face, in which case the motion may be filed at any time. People* v. *Davis,* 143 Cal. 673, 675; *Rue* v. *Quinn,* 137 Cal. 651, 654; 14 Cal. Jur. 1067." (Italics ours.) The same rule is stated in *Effect of Rule 60b on Other Methods of Relief from Judgment,* 4 Federal Rules Service, 942, 945-6: "A judgment which is void on its face may be set aside on motion at any time, and the six-months limitation prescribed in Rule 60*b* is inapplicable." And see *Stubbs* v. *United States,* 21 F. Supp. 1007 (Dist. Ct., N. C., 1938); *Williams* v. *North Carolina,* 325 U. S. 226; *Pennoyer* v. *Neff,* 95 U. S. 714; Moore and Rogers, *Federal Relief From Civil Judgments,* 55 Yale L. J. 623, 692; *Olmedo* v. *Rivera,* 65 P.R.R. 45, 48.

In view of our determination that the *Sucesión* was not in default because it failed to answer the complaint, such cases as *Bass* v. *Hoagland,* 172 F. 2d 205 (C.A. 5, 1949), *Hill* v. *Hawes,* 320 U. S. 520, and *Klapprott* v. *United States,* 335 U. S. 601, although not strictly in point, support our conclusion that the failure to notify the *Sucesión* of the stipulation between the People and the Company and of the motion for judgment based thereon made the judgment void.

▉ It might perhaps be argued that this result is a windfall for the *Sucesión* as the testimony shows that when its members were served with process they never intended to appear at the hearing, and that one of its members, through his daughter, who is a lawyer, informally advised the attorney for the government to that effect. See footnote 4. But such informal assurances do not constitute sufficient justification for the failure to notify the *Sucesión* of the stipulation and the motion for judgment. We do not stop to determine what the situation would be if the People and the

Company had taken the precaution of serving notices on the *Sucesión* of both the stipulation and the motion for judgment based thereon and the *Sucesión* had failed to object thereto.[15] For present purposes, it is enough to state that no such notices were served. The *Sucesión* may therefore still press its claim despite the belated filing thereof.

We have already indicated that this rule—a defendant who has been served with notice of a condemnation proceeding is entitled to be heard on disposition of the compensation even if he fails to appear or answer—applies only if the complaint and the exhibits attached thereto show affirmatively that the defendant allegedly in default has a possible substantial interest in the condemned property. We think that is the situation in this case. Exhibit I of the complaint states that the Company obtained title to the condemned property by a deed of cession in 1897 from the predecessor in interest of the *Sucesión*. And it is precisely on the contents of this deed that the *Sucesión* bases its claim. The deed recites that "In view of the notorious advantages which would result therefrom for both parties", the predecessor in interest of the *Sucesión* "ceded gratuitously" to the Company the 1125 sq. meter tract "for the establishment and installation of the railway station . . .". The deed goes on to provide that the Company "may discontinue the railway station if it should become prejudicial to its interests in which case that should be justified in due form, restoring to the person who had made the cession, Señor Vicente, the dominion of the parcel of land ceded for that purpose." In its motion to set aside the judgment the

---

[15] *If the record affirmatively showed without question that the Sucesión was entitled to some compensation,* even its failure to object when so notified might not under the authorities hereinbefore discussed be sufficient to justify cutting them off without any share in the deposited money; *quaere,* if as here the right of the *Sucesión* to compensation is in dispute. In similar situations in Federal cases we are advised that United States Attorneys frequently obtain from the affected parties for filing in court written disclaimers of any interest in the fund.

*Sucesión* alleged that *a long time before these proceedings had begun,* the Company had ceased to use the land as a railway station. It therefore argues that the land reverted to it and that it belonged to the *Sucesión* and not to the Company when the condemnation proceeding was instituted. If the *Sucesión* can prove these facts, this case may be distinguishable from *People of Puerto Rico* v. *United States,* 132 F. 2d 220 (C. A. 1, 1942), where the court held that a similar possibility of reverter was not a compensable interest in property which was condemned *before the event calling for reverter had occurred.* See 2 Nichols on *Eminent Domain,* 3rd ed., pp. 32–35; Restatement, Property, § 53 (*b*) (*c*), p. 187 *et seq.;* 43 Col. L. Rev. 137; 29 Cal. L. Rev. 525. *Cf. Municipality* v. *Río Piedras Development Co.,* 69 P.R.R. 557, 560, footnote 2; *Figueroa* v. *Guerra,* 69 P.R.R. 565, 571, footnote 4; *Zayas* v. *Planning Board,* 69 P.R.R. 27, 35.

We intimate no view on the merits of the claim of the *Sucesión.* We hold only that the record before the trial court showed on its face that the *Sucesión* had a possible substantial interest in the condemned property. The trial court was therefore precluded from disposing of the compensation without notice to the *Sucesión.* The parties are in dispute as to (1) the meaning of the recordations in the Registry of Property with reference to the respective interests of the Company and the *Sucesión,* and (2) the alleged cessation of the use of the tract as a railway station. But these questions can be decided only after a hearing on the merits of the claim of the *Sucesión.* We shall therefore set aside the judgment based on the stipulation between the People and the Company and remand the case to the Superior Court, which, after hearing testimony, will resolve the controversy between the *Sucesión* and the Company on the merits.

To bring our conclusion into sharper focus, we think it appropriate to state a hypothetical case which illustrates vividly the dangers inherent in the position taken by the

Company.   Suppose A owns a two acre tract of land which is recorded in his name.   B owns an adjoining two acre parcel which is likewise recorded in his name.   Both tracts have exactly the same value.   The State files a condemnation proceeding against the four acres of land.   It joins A and B as defendants.   The complaint alleges the foregoing as to the ownership of the two tracts.   However, A files an answer alleging that he owns both tracts.   B files no answer and the Secretary of the court as a routine matter enters a default against B.   Thereafter, without notice to B, the State and A enter into a stipulation (1) that the entire deposit, plus an additional sum agreed on between the State and A, is just compensation for the four acres, and (2) that the entire compensation shall be paid to A.   The court proceeds, without notice to B, to enter a judgment ordering the payment of all the deposited money to A.

We believe that in this supposititious case B, thirteen months later, would be entitled to an order (1) setting aside the judgment as void for lack of notice to B, and (2) requiring A to return to the Secretary of the court half of the sum he had received in order that the court could subsequently direct payment thereof to B.   We recognize, of course, that the instant case is not so clear as the example we have given.   But the difference between the two situations is only a question of degree.   The controlling principle is the same in both cases;   namely, if the pleadings show affirmatively as in the instant case that B, a party who has been joined as a defendant, has a possible substantial interest in the condemned property, the government and another defendant may not between them settle the question of distributing the entire compensation without notice to B, even though B has failed to answer the complaint.

We are aware of the problems that our decision in this case may create in connection with the disposition of condemnation cases.   But there need not be any real difficulty if the scope of our holding is properly understood.

We realize that the government out of an abundance of caution at times includes persons as defendants who obviously have no interest in the condemned property. These defendants need not be served with further notices if they do not appear or answer. A defendant who does not file an answer must be notified of applications to withdraw the deposited money or of hearings on the issue of compensation only if as in this case the pleadings show affirmatively that there is a possible substantial interest in the property belonging to such a defendant. Wherever there is substantial doubt the parties should, of course, notify defendants of all steps in connection with the disposition of the deposited money.

For the reasons stated, the order of the former Condemnation Court denying the motion to set aside the judgment of March 8, 1949 will be reversed, a new order will be entered setting aside the judgment of March 8, 1949, and the case will be remanded to the Superior Court for further proceedings not inconsistent with this opinion.

Mr. Justice Ortiz and Mr. Justice Belaval did not participate herein.